DeFLAVIIS v LORD & TAYLOR, INC

Docket No. 186156. Submitted March 4, 1997, at Detroit. Decided May 13, 1997, at 9:10 A.M.

Gabriel and Maria DeFlaviis brought an action in the Wayne Circuit Court against Lord & Taylor, Inc., alleging claims of defamation and unlawful retaliation based on the Civil Rights Act following the defendant's termination of Gabriel's employment. The court, Richard P. Hathaway, J., granted summary disposition for the defendant. The plaintiffs appealed.

The Court of Appeals *held*:

1. Section 701 of the Civil Rights Act, MCL 37.2701; MSA 3.548(701), allows Gabriel, a former employee, to bring an action alleging unlawful retaliation as a result of Lord & Taylor's postemployment actions allegedly taken in retaliation for Gabriel's having filed an action against Lord & Taylor in the federal courts alleging age discrimination in violation of the Civil Rights Act.

2. The plaintiffs presented a prima facie case of unlawful retaliation. Summary disposition of the plaintiffs' unlawful retaliation claim was improper.

3. The plaintiffs presented evidence indicating that the defendant took an adverse employment action against Gabriel that resulted in Gabriel's loss of an opportunity to work for another employer. Summary disposition of this claim was improper.

4. The plaintiffs presented sufficient evidence to create an issue of material fact with regard to their defamation claim. Summary disposition of the defamation claim was improper.

Reversed and remanded.

1. CIVIL RIGHTS — UNLAWFUL RETALIATION — MASTER AND SERVANT.

A plaintiff seeking to establish a prima facie case of unlawful employment-related retaliation under the Civil Rights Act must show that the plaintiff engaged in a protected activity, that this was known by the defendant, that the defendant took an employment action adverse to the plaintiff, and that there was a causal connection between the protected activity and the adverse employment action (MCL 37.2701; MSA 3.548[701]).

2. Civil Rights — Master and Servant — Postemployment Discrimination.

> A former employee may bring an action under the Civil Rights Act against a former employer for postemployment actions of the employer allegedly taken in retaliation for the employee's having engaged in activity protected under the Civil Rights Act such as the filing of an action under the Civil Rights Act alleging age discrimination in employment by the employer (MCL 37.2701; MSA 3.548[701]).

3. Torts — Defamation — Elements.

> The elements of a defamation claim are: a false and defamatory statement concerning the plaintiff, an unprivileged communication to a third party, fault amounting to at least negligence on the part of the publisher, and either actionability of the statement irrespective of special harm or the existence of special harm caused by publication.

*Reosti, James & Sirlin, P.C.* (by *Ronald Reosti*), and *Neal Bush,* for the plaintiff.

*Moffett & Dillon, P.C.* (by *Stephen T. Moffett* and *Christine Marakas Battle*), for the defendant.

Before: Doctoroff, P.J., and Michael J. Kelly and Young, JJ.

Per Curiam. Plaintiff[1] appeals as of right from the trial court's order awarding summary disposition to defendant with regard to plaintiff's unlawful retaliation action brought pursuant to the Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* and plaintiff's defamation action. We reverse and remand.

Briefly, in 1990, plaintiff was terminated from his position as regional alterations director for defendant, Lord & Taylor, Inc. According to plaintiff, defendant's stated reason for the termination was that plaintiff

---

[1] Plaintiff Maria DeFlaviis' connection to the instant case is by way of her derivative claim for loss of consortium. Hence, essentially only plaintiff Gabriel DeFlaviis' claims are at issue on appeal. Therefore, any reference to "plaintiff" herein will be to Gabriel DeFlaviis only.

had provided free alterations to company executives. Subsequently, plaintiff filed a lawsuit against defendant in the United States District Court, Eastern District of Michigan, alleging, among other things, age discrimination in violation of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* Summary disposition was granted in favor of defendant in that case in an unpublished opinion issued February 24, 1992 (Docket No. 91-CV-60024-AA).[2]

In May 1992, plaintiff interviewed with Scott Cullen, operations manager for Neiman Marcus, for the position of alterations manager at the Troy Neiman Marcus store. Plaintiff claimed that during the interview he explained the circumstances surrounding his discharge from Lord & Taylor and that Cullen told him that the discharge would have no effect on the hiring decision made by Neiman Marcus.

Thereafter, in the summer of 1992, Gary Manson, director of security for Neiman Marcus, called Craig Cunningham, who was vice president of loss prevention for Lord & Taylor, and requested information regarding plaintiff's discharge. Manson indicated that Cunningham told him that plaintiff was terminated for cause for giving away alterations and for bringing in outside work and having it performed by defendant's tailors, and that plaintiff had personally benefited from the work performed. Manson stated in an affidavit that he decided not to hire plaintiff because of the discrepancies between plaintiff's explanation and Cunningham's explanation of the reasons for plaintiff's discharge. On the other hand, Cunningham

---

[2] The order of summary disposition was affirmed in an unpublished opinion per curiam of the United States Court of Appeals for the Sixth District, issued December 8, 1992 (Docket No. 92-1340).

claimed that he provided Manson no information regarding the circumstances surrounding plaintiff's discharge.

Subsequently, plaintiff filed the instant lawsuit claiming that the alleged negative reference given by Cunningham to Manson was in retaliation for the age discrimination lawsuit plaintiff previously had filed against defendant in the federal court. Plaintiff also claimed that the remarks made by Cunningham to Manson were defamatory in nature. Subsequently, defendant moved for and was granted summary disposition.

On appeal, plaintiff contends that the trial court erred in granting defendant summary disposition. Summary disposition was granted in favor of defendant pursuant to MCR 2.116(C)(10) on the basis that plaintiff had failed to present credible evidence "to establish the existence of the disputed material facts." This Court reviews de novo the trial court's order under MCR 2.116(C)(10). *Michigan Mutual Ins Co v Dowell*, 204 Mich App 81, 85-86; 514 NW2d 185 (1994). When conducting this review, we examine the entire record in a light most favorable to the nonmoving party to determine whether a record could be developed that would leave open an issue on which reasonable minds could differ. *Id.* Giving the nonmoving party the benefit of reasonable doubt, "[t]he trial court must review the record evidence, make all reasonable inferences therefrom, and determine whether a genuine issue of material fact exists . . . ." *Bertrand v Alan Ford, Inc*, 449 Mich 606, 617-618; 537 NW2d 185 (1995). Summary disposition is proper where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. *Id.*

However, a court may not weigh the evidence before it or make findings of fact; if the evidence before it is conflicting, summary disposition is improper. *Barnell v Taubman Co, Inc*, 203 Mich App 110, 115; 512 NW2d 13 (1993).

We first address the merits of the trial court's ruling regarding plaintiff's claim of unlawful retaliation based on the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* We find the trial court improperly granted summary disposition of this claim.

Section 701 of the Civil Rights Act, MCL 37.2701; MSA 3.548(701) reads in relevant part as follows:

> Two or more persons shall not conspire to, or a person shall not:
>
> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

To establish a prima facie case of unlawful retaliation under the Civil Rights Act, a plaintiff must show (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Polk v Yellow Freight System, Inc*, 876 F2d 527, 531 (CA 6, 1989); see also *Booker v Brown & Williamson Tobacco Co, Inc*, 879 F2d 1304, 1310 (CA 6, 1989); *Kroll v Disney Store, Inc*, 899 F Supp 344, 348 (ED Mich, 1995).

Before considering plaintiff's contention that he established a prima facie case of retaliation, we must

first determine whether the Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* protects the activities of former employees like plaintiff. Plaintiff claims that former employees may sue for retaliation under the Civil Rights Act. Conversely, defendant asserts that Cunningham's alleged negative reference to Manson could not have been unlawful retaliation under the Civil Rights Act because plaintiff was no longer employed by defendant at the time of the negative reference.

Whether a former employee may bring an action for unlawful retaliation under the Civil Rights Act is a question of first impression in Michigan. However, the United States Supreme Court, in *Robinson v Shell Oil Co,* 519 US ___; 117 S Ct 843; 136 L Ed 2d 808 (1997), recently held that § 704(a) of title VII of the Civil Rights Act of 1964 protects former employees from retaliation by a former employer.[3] While this Court is not bound by federal precedent based on title VII, those precedents analogous to questions presented under the Civil Rights Act are highly persuasive and will be considered by this Court. *McCalla v Ellis,* 180 Mich App 372, 377-378; 446 NW2d 904 (1989).

Section 704(a) of title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment" who have either availed themselves of the protections of title VII or assisted others in doing so. 78 Stat 257, as amended, 42 USC 2000e-3(a). The *Robinson* Court determined that the term "employees" as used in § 704(a) included former employees so that the petitioner

---

[3] Certiorari was granted in the *Robinson* case to resolve a conflict among the federal circuit courts concerning whether the term "employees" as used in § 704(a) included former employees.

could bring suit against his former employer for post-employment actions allegedly taken in retaliation for the petitioner's having filed a charge with the Equal Employment Opportunity Commission (EEOC):

> Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and "the statutory scheme is coherent and consistent."
>
> The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. In this case, consideration of those factors leads us to conclude that the term "employees," as used in § 704(a), is ambiguous as to whether it excludes former employees.
>
> At first blush, the term "employees" in § 704(a) would seem to refer to those having an existing employment relationship with the employer in question. This initial impression, however, does not withstand scrutiny in the context of § 704(a). First, there is no temporal qualifier in the statute such as would make plain that § 704(a) protects only persons still employed at the time of the retaliation. That the statute could have expressly included the phrase "former employees" does not aid our inquiry. Congress also could have used the phrase "current employees." But nowhere in Title VII is either phrase used—even where the specific context otherwise makes clear an intent to cover current or former employees. . . .
>
> Second, Title VII's definition of "employee" likewise lacks any temporal qualifier and is consistent with either current or past employment. . . .
>
> Third, a number of other provisions in Title VII use the term "employees" to mean something more inclusive or different than "current employees." For example, §§ 706(g)(1) and 717(b) both authorize affirmative remedial action . . . "which may include . . . reinstatement or hiring of employees." 42 USC §§ 2000e-5(g)(1) and 2000e-16(b). As petitioner notes, because one does not "reinstat[e]" current employ-

ees, that language necessarily refers to former employees. Likewise, one may hire individuals *to be* employees, but one does not typically hire persons who already *are* employees.

*     *     *

Of course, there are sections of Title VII where, in context, use of the term "employee" refers unambiguously to a current employee, for example those sections addressing salary or promotions.

. . . Once it is established that the term "employees" includes former employees in some sections, but not in others, the term standing alone is necessarily ambiguous and each section must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute.

*     *     *

Finding that the term "employees" in § 704(a) is ambiguous, we are left to resolve that ambiguity. The broader context provided by other sections of the statute provides considerable assistance in this regard. As noted above, several sections of the statute plainly contemplate that former employees will make use of the remedial mechanisms of Title VII. Indeed, § 703(a) expressly includes discriminatory "discharge" as one of the unlawful employment practices against which Title VII is directed. 42 USC § 2000e-2(a). Insofar as § 704(a) expressly protects employees from retaliation for filing a "charge" under Title VII, and a charge under § 703(a) alleging unlawful discharge would necessarily be brought by a former employee, it is far more consistent to include former employees within the scope of "employees" protected by § 704(a).

In further support of this view, petitioner argues that the word "employees" includes former employees because to hold otherwise would effectively vitiate much of the protection afforded by § 704(a). . . .

*     *     *

We hold that the term "employees," as used in § 704(a) of Title VII, is ambiguous as to whether it includes former

employees. It being more consistent with the broader context of Title VII and the primary purpose of § 704(a), we hold that former employees are included within § 704(a)'s coverage. [*Robinson, supra,* 136 L Ed 2d 813-817 (citations omitted).]

While we note that § 704(a) of title VII refers to discrimination against "employees" and the analagous provision of the Civil Rights Act, MCL 37.2701; MSA 3.548(701) (hereinafter referred to as § 701), refers to retaliation or discrimination against a "person," indicating that perhaps § 701 provides broader protection than § 704(a) of title VII, we find persuasive and adopt the reasoning set forth in *Robinson* and hold that § 701 of the Civil Rights Act protects former as well as current employees. Section 701 "clearly tracks" § 704(a) of title VII, *Booker, supra,* p 1312, and we believe that it should be construed in the same manner. Moreover, such an interpretation furthers the overall purpose of the Civil Rights Act, to prevent discrimination directed against a person because of that person's membership in a certain class and to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases, *Radtke v Everett,* 442 Mich 368, 379; 501 NW2d 155 (1993); *Noecker v Dep't of Corrections,* 203 Mich App 43, 46; 512 NW2d 44 (1993), and furthers the specific purpose of § 701, to protect access to the machinery available to seek redress for civil rights violations and to protect operation of that machinery once it has been engaged, *Booker, supra.*

Having established that plaintiff, a former employee, is entitled to bring an action for unlawful retaliation under § 701 of the Civil Rights Act, we now find that plaintiff established a genuine issue of

material fact regarding the existence of a prima facie case of unlawful retaliation, and summary disposition pursuant to MCR 2.116(C)(10) was therefore improper. Plaintiff, by filing the age discrimination action against defendant, was engaged in an activity protected under the Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.*[4] Moreover, defendant, a party to the age discrimination lawsuit, obviously knew that plaintiff had filed the age discrimination action.[5]

Next, plaintiff presented evidence to indicate that defendant took an adverse employment action against plaintiff that resulted in plaintiff losing the opportunity to work for Neiman Marcus. Gary Manson, Neiman Marcus' director of security, testified during his deposition that Craig Cunningham, defendant's vice president of loss prevention, informed him that plaintiff had been terminated for giving away alterations and for bringing in outside work, having it performed by defendant's tailors, and personally benefiting from the work performed. In his affidavit, Manson averred that he decided not to hire plaintiff because of the discrepancies between plaintiff's version of the rea-

---

[4] Defendant admits that plaintiff was engaged in an activity protected under the Civil Rights Act.

[5] Defendant admits that plaintiff's protected activity "was known to this Defendant." Moreover, in spite of the fact that Craig Cunningham, defendant's vice president of loss prevention, claims he did not know the nature of the claims raised by plaintiff in his age discrimination lawsuit, he admitted that he was aware that plaintiff had filed an action against defendant. Clearly, as vice president of loss prevention, Cunningham would have had access to company records indicating the nature of plaintiff's claims against defendant. In fact, Gary Manson testified that Cunningham told him he had reviewed the DeFlaviis file and that the "court had found in Lord and Taylor's favor with a directed verdict."

sons he was fired[6] and Cunningham's version of the reasons plaintiff was fired. Cunningham, on the other hand, stated in his affidavit that he did not provide Manson with any information regarding the discharge and that it would be a violation of store policy to reveal the reasons for an employee's discharge.[7] Where, as here, the evidence is conflicting with regard to an element of plaintiff's prima facie case, summary disposition is improper. *Barnell, supra,* p 115.

Lastly, we believe that plaintiff presented some evidence that there was a causal connection between the protected activity, the age discrimination lawsuit, and the adverse employment action, Cunningham's negative reference to Manson resulting in plaintiff losing the opportunity to work for Neiman Marcus. The age discrimination lawsuit was pending at the time Cunningham made his disparaging remarks to Manson. While plaintiff admitted that he performed alterations for defendant's executives free of charge, he denied bringing in outside work and personally profiting from the performance of that work, and defendant presented no evidence to indicate that plaintiff had done so. Moreover, evidence was presented that indicated that Cunningham's remarks were made in viola-

---

[6] Neiman Marcus operations manager Arthur Scot Cullen testified during his deposition that plaintiff told him he was terminated by Lord & Taylor "on the grounds of giving free alterations on merchandise purchased at Lord & Taylor to Lord & Taylor executives."

[7] Cunningham was not working for defendant at the time plaintiff was fired. However, it is reasonable to assume that as vice president of loss prevention, Cunningham would have had access to information regarding the reasons for plaintiff's termination. In fact, Gary Manson testified during his deposition that Cunningham told him that he had reviewed plaintiff's file. Immediately thereafter, Cunningham gave Manson his version of the reasons for plaintiff's termination.

tion of store policy, an indication that perhaps there was a retaliatory motive behind the remarks. We believe it could be inferred from the evidence presented that Cunningham made the complained-of remarks in order to retaliate against plaintiff for his age discrimination lawsuit. If that was the purpose of the remarks, they had the desired effect. Manson acknowledged in his affidavit that he decided not to hire plaintiff after hearing Cunningham's version of the reasons plaintiff was fired.[8] Notes prepared by Manson immediately after his telephone conversation with Cunningham indicate that plaintiff was "rejected for hire" by Neiman Marcus as a result of the information supplied to Manson by Cunningham.

In conclusion, we believe that plaintiff presented a prima facie case of unlawful retaliation. The trial court therefore erred in granting summary disposition in favor of defendant with regard to this claim.

Next, we address the merits of plaintiffs' defamation claim. We conclude that the trial court also erred in granting summary disposition of this claim.

The elements of a defamation claim are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the state-

---

[8] We note that the evidence was conflicting with regard to this element as well. Arthur Scot Cullen, operations manager at Neiman Marcus, testified that he had already found someone to fill the position of alterations manager. However, Gary Manson testified that even after he had rejected plaintiff's application for employment, Cullen wanted to engage in "further discussions" with Manson to "determine if it were possible to be able to employ Mr. DeFlaviis." At this point, Manson told Cullen that plaintiff's employment application had been rejected and there was nothing further to discuss.

ment irrespective of special harm or the existence of special harm caused by publication. *Northland Wheels Roller Skating Center, Inc v Detroit Free Press, Inc,* 213 Mich App 317, 323; 539 NW2d 774 (1995).

Plaintiff contends that defendant defamed him when Cunningham told Manson that plaintiff had been terminated for cause for giving away alterations and that plaintiff had "personally benefited from the work." Specifically, plaintiff points to the following portion of Manson's deposition testimony:

> Mr. Cunningham stated that Mr. DeFlaviis was employed at Lord and Taylor; that he had reviewed the file, and Mr. DeFlaviis was terminated for cause for giving alterations and—for giving away alterations, and for bringing in outside work and having it performed by Lord and Taylor tailors. He stated that Mr. DeFlaviis had personally [benefited] from the work that was performed.

Cunningham denied making the above statements. We believe that, in light of the conflicting evidence presented below, the trial court erred in granting summary disposition of plaintiff's defamation claim. Clearly, the statements allegedly made by Cunningham to Manson were defamatory in nature. Further, it appears that the statements were false. Defendant presented no evidence to indicate that plaintiff had brought in outside alterations or had personally benefited from the performance of outside alteration work. Additionally, we do not believe the statements were privileged. *Gonyea v Motor Parts Federal Credit Union,* 192 Mich App 74, 79; 480 NW2d 297 (1991). As we indicated above, from the evidence presented it could be inferred that Cunningham made the defamatory statements for the purpose of retaliating against plaintiff for bringing the age discrimination lawsuit.

Hence, there was evidence to indicate that Cunningham did not act in good faith in making the complained-of remarks. *Id.*

We conclude that sufficient evidence existed to allow plaintiffs to create an issue of material fact with regard to plaintiffs' defamation claim. On remand, in light of Manson's deposition testimony, plaintiff should be given an opportunity to amend his complaint to plead his claim for defamation with specificity. *Horn v Dep't of Corrections*, 216 Mich App 58, 65; 548 NW2d 660 (1996); *Gonyea, supra; Noyd v Claxton, Morgan, Flockhart & VanLiere*, 186 Mich App 333, 340; 463 NW2d 268 (1990).

Reversed and remanded.