**Carolyn THOMPSON, Plaintiff–Appellant,**

v.

**AMERITECH ADVERTISING SERVICES, Defendant–Appellee.**

No. 00–2486.

United States Court of Appeals, Sixth Circuit.

June 27, 2002.

Before MARTIN, Chief Judge; KEITH, and KENNEDY, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiff Carolyn Thompson sued her former employer, Ameritech Advertising Services, alleging claims of race discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Michigan Elliot–Larsen Civil Rights Act. She also brought a claim of retaliation under the Michigan Civil Rights Act, alleging that

Ameritech harassed, disciplined, and terminated her after she complained about racial discrimination in the workplace, in violation of M.C.L. § 37.2701. The district judge granted summary judgment in favor of Ameritech on all counts. Thompson appeals the district court's judgment, but only with respect to the retaliation claim. For the following reasons, we affirm.

## I.

Thompson began her employment with Ameritech in September 1972 as a Market Assignment Clerk. She was one of eight full-time staff associates in the Market Assignment Department. Of those eight employees, seven are black, counting plaintiff. Only one, Allison Davis, is white. Thompson's job involved analyzing new customers and assigning them to sales representatives. Thompson was a member and union steward of the Communication Workers of America. Her employment was terminated on January 7, 1999.

Thompson's complaints of racism focused primarily on two incidents. In the first incident, her supervisor, Michael Dawson, was speaking to a group of employees from the Market Assignment Department. Allison Davis, the white employee, was not present. The other full-time employees in the department, all of whom are black, were present. At that meeting, Dawson began by addressing the group as "you people," and referred to the employees present as "lazy, incompetent, and dysfunctional." (Thompson Dep., J.A. at 228). In the second incident, Dawson had distributed flyers to several of the employees entitled, "The Top 20 Reasons Dogs Don't Use Computers." According to Thompson, this flyer was given only to black employees, although Ameritech claims that Allison Davis also received a copy.

Thompson complained of Dawson's conduct on multiple occasions, but she focuses on two specific instances. In August 1997, she signed a letter addressed to Peter McDonald, the president of Ameritech Advertising Services, citing both of the incidents described above. Then, in April 1998, Thompson wrote a memo to Denise Strunk, her direct supervisor, complaining of race discrimination. Thompson alleges that she was harassed, disciplined, and ultimately fired in retaliation for her complaints of racism. She contends that she had received positive reviews until she sent the August 1997 letter, when she "all of a sudden" began receiving negative feedback from her direct supervisor, Denise Strunk.

Ameritech counters that Thompson's firing was a result of her long history of performance problems. In arguing for summary judgment, Ameritech produced evidence of multiple disciplinary warnings, both oral and written. Thompson's performance problems apparently began in 1991, before Strunk was Thompson's supervisor. She received her first oral warnings for poor attendance and excessive personal telephone usage in September 1991. In 1992, she received a written notice indicating that she would not be permitted to work overtime until she increased her productivity levels. She also received an overall rating of "needs improvement" on a 1992 review. In 1993, she received an overall rating of "fails to meet standards." In 1995, she received a reprimand for productivity problems. Between 1995 and 1997 there were no documented oral or written warnings. In late 1997, however, she began receiving oral and written warnings again. At this point her direct supervisor was Denise Strunk. She was eventually placed on a developmental plan, a formal retraining program designed to improve her performance. Following that, she took a leave of absence. When she

returned in August 1998, she was placed on a second developmental plan. At the end of her second developmental plan, Strunk met with Dawson and they decided to terminate Thompson.

## II.

We review a district court order granting summary judgment under a *de novo* standard of review, without deference to the decision of the lower court. *Taylor v. Michigan Dept. of Corrections,* 69 F.3d 76 (6th Cir.1995); *Lake v. Metropolitan Life Ins. Co.,* 73 F.3d 1372, 1376 (6th Cir.1996). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

Thompson appeals the district court's order only with respect to her retaliation claim under the Michigan Civil Rights Act. Michigan courts interpreting that state's Civil Rights Act look for guidance to the federal courts' interpretation of the analogous provisions of Title VII. *See Barrett v. Kirtland Community College,* 245 Mich. App. 306, 628 N.W.2d 63, 69–70 (2001). In order to establish a prima facie case of retaliation under M.C.L. § 37.2701, a plaintiff must show that: (1) she engaged in protected activity, (2) her exercise of rights was known by the defendant, (3) the defendant took an adverse action against her, and (4) there was a causal connection between the protected activity and the adverse employment action. *See DeFlaviis v. Lord & Taylor, Inc.,* 223 Mich.App. 432, 566 N.W.2d 661, 663 (1997) (citing *Polk v. Yellow Freight System, Inc.,* 876 F.2d 527, 531 (6th Cir.1989)). If plaintiff establishes her prima facie case, the burden then shifts to the defendant to articulate a legit-

imate, nondiscriminatory reason for the adverse action. If defendant meets this burden, the plaintiff, in order to avoid summary judgment, must produce evidence that the defendant's proffered reason is a pretext for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Polk,* 876 F.2d at 531; *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987).

■ Here, Ameritech argues that Thompson failed to meet prongs three (except with respect to the termination) and four. Certainly, Thompson's termination qualifies as an adverse employment action. Whether Thompson's disciplinary warnings, reprimands, or placement on a developmental plan constitute an adverse action is a closer question, but one that we need not face in this appeal. With respect to prong four, Ameritech argues that temporal proximity is not sufficient evidence from which a jury can find a causal connection. Ameritech also notes that the termination occurred 17 months after Thompson signed the letter to McDonald, and 9 months after she wrote the memo to Strunk. Thus, Ameritech argues, the length of time between Thompson's complaints and the termination is too long to permit a jury to infer causation.

As the district judge noted, Thompson is unable to point to any evidence to establish causation, other than the proximity of the August 1997 letter to her disciplinary problems. Thompson states only that her performance problems began "all of a sudden" after she had signed the August 1997 letter. She claims that she had been a good and satisfactory employee up to that point, and notes that her last prior documented problem was in 1995.

Although temporal proximity alone may, in some rare cases, be sufficient evidence to permit an inference of a causal connection, *see Nguyen v. City of Cleveland,* 229

F.3d 559, 567 (6th Cir.2000), it is not in this case. Here, Ameritech has presented evidence to undermine any inference of causation that might be drawn from temporal proximity. First, it is undisputed that none of the other three employees who signed the letter to McDonald have suffered any adverse action. Second, the documented performance problems occurring before 1997 tend to undermine any inference that Thompson's later disciplinary warnings were in response to her complaints of discrimination. The temporal proximity argument is particularly unconvincing where a plaintiff's claim of retaliation is otherwise weak. *See id.* at 567.

■ Even were this court to assume that Thompson could establish a prima facie case of retaliation, her claim would fail because she is unable to provide evidence of pretext. Ameritech claims that it had a valid, nondiscriminatory reason for discharging Thompson—her performance problems. Those problems are certainly well-documented in the record. Thompson offers no evidence of pretext, other than the temporal proximity between her complaints and her negative performance evaluations. But temporal proximity, standing alone, is not sufficient evidence of pretext. *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 317 (6th Cir.2001).

### III.

For the foregoing reasons, we affirm the judgment of the district court.