# STATE OF MICHIGAN

# COURT OF APPEALS

JEREMY GOODALE,

Plaintiff-Appellant,

v

LANDSCAPE FORMS, INC.,

Defendant-Appellee.

UNPUBLISHED
November 24, 2015

No. 322617
Kalamazoo Circuit Court
LC No. 2013-000278-CZ

Before: MARKEY, P.J., and OWENS and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff Jeremy Goodale appeals as of right the trial court's order granting defendant Landscape Forms, Inc.'s, motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

Plaintiff began working for defendant in April 2012 as a welder. Plaintiff is six feet tall and weighed 446 pounds when he began working for defendant. James Ackley (hereinafter James) was a manager who had the authority to terminate plaintiff. Scott Ackley was plaintiff's supervisor, but there is no indication that he had the power to terminate plaintiff's employment. On February 20, 2013, James and Scott Ackley told plaintiff during a performance evaluation that they were concerned with his attendance. On February 25 and 26, 2013, plaintiff complained to Karen Phillips, an employee of defendant's human resources department, that three of his coworkers—Justen Marsh, Adam Reed, and Aaron Klok—were harassing him because of his weight. Plaintiff told her that they wrote "bacon" on his helmet, that Reed sprayed an anti-spatter chemical on plaintiff's backside, that Marsh put Visine into plaintiff's water, and that either Marsh or Reed put plaintiff's welding lens on backwards. Plaintiff also told Phillips that Marsh made a joke that McDonalds ran out of food because plaintiff bought all their hamburgers. He told her that Reed and Klok took one of his shirts, and that Marsh took a picture of them both fitting into it at the same time. Lastly, he complained that Marsh and Reed once made whale noises when plaintiff's wife brought him lunch. Besides the complaints plaintiff made to Phillips, he testified at deposition that additional harassment occurred at work, and that the harassment became so bad toward the end of February 2013 that he no longer wanted to come to work.

Phillips, James, and Scott Ackley began an investigation regarding plaintiff's complaints. They interviewed Marsh, Reed, Klok, and several other employees. Their investigation revealed

numerous instances of misconduct by nearly all of the employees interviewed, as well as by plaintiff. For example, the investigation revealed that several employees, including plaintiff, sprayed each other with anti-spatter. Information obtained in the investigation showed that plaintiff was the instigator of much of the inappropriate behavior, and that he intended to get Marsh fired. James averred in his affidavit that plaintiff showed no accountability for his actions and gave no indication that his behavior would improve. As a result of what was discovered during the investigation, James terminated the employment of Marsh, Reed, Klok, and plaintiff. Plaintiff then sued defendant under the Civil Rights Act ("CRA"), MCL 37.2101 *et seq.*, for hostile work environment resulting from weight harassment and for retaliatory termination. The trial court granted defendant's motion for summary disposition on both counts, under MCR 2.116(C)(10). Plaintiff raises a number of issues on appeal.

On appeal, plaintiff first argues that the trial court's reasoning for granting defendant's motion was so unclear as to preclude appellate review. Plaintiff's argument is without merit because "[f]indings of fact and conclusions of law are unnecessary in decisions on motions" for summary disposition. MCR 2.517(A)(4). Moreover, we conclude that the trial court's reasoning for its decision, elucidated over approximately 17 pages of transcript, is impressively clear and thorough. The trial court, when making its ruling from the bench, addressed and elaborated upon each argument that was made and every element of both of plaintiff's claims, even providing the parties with authority and corresponding citations. Even if it were not so thoroughly laid out, this would not preclude appellate review as this Court can affirm a trial court's decision where the trial court reached the correct result, even if for the wrong reason. *Gen Aviation, Inc v Capital Region Airport Auth*, 224 Mich App 710, 716; 569 NW2d 883 (1997). Lastly, because our review of a decision on a motion for summary disposition is de novo, we need not defer to the trial court's conclusions, as it is "the pleadings, admissions, and other evidence submitted by the parties" that is to be reviewed. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

Plaintiff next argues that the trial court erred in granting defendant's motion with regard to plaintiff's claim of retaliation. To establish a prima facie case of retaliation under MCL 37.2701, "a plaintiff must show (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997). "To establish causation, the plaintiff must show that his participation in activity protected by the CRA was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two." *Barrett v Kirtland Community College*, 245 Mich App 306, 315; 628 NW2d 63 (2001). Furthermore, to show causation in a claim of retaliation, "[p]laintiff must show something more than merely a coincidence in time[1]

---

[1] Speaking of coincidence in time and retaliation, although the trial court did not state such a connection, this court finds it noteworthy and intriguing that there were no claims or allegations of harassment made by the plaintiff, until *after* he received a performance evaluation in which he was criticized for his excessive number of unplanned absences.

-2-

between protected activity and adverse employment action." *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 286; 696 NW2d 646 (2005), quoting *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003).

If the plaintiff establishes a prima facie case of retaliation,

the burden shifts to the defendant to articulate a legitimate business reason for the discharge. If the defendant produces evidence establishing the existence of a legitimate reason for the discharge, the plaintiff must have an opportunity to prove that the legitimate reason offered by the defendant was not the true reason, but was only a pretext for the discharge. [*Roulston v Tendercare (Mich), Inc*, 239 Mich App 270, 281; 608 NW2d 525 (2000).]

"A plaintiff can prove pretext either directly by persuading the court that a retaliatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 281.

The first element of his retaliation claim was met because on February 25, 2013, plaintiff complained to Phillips about being harassed. MCL 37.2701(a). The second element was met because James was aware of plaintiff's complaints and James made the decision to terminate him. See *Aho v Dep't of Corrections*, 263 Mich App 281, 292; 688 NW2d 104 (2004). And, the third element was met because plaintiff was terminated. See *Pena v Ingham Co Road Comm*, 255 Mich App 299, 312; 660 NW2d 351 (2003). As the trial court clearly and concisely stated, the only element at issue with regard to plaintiff's retaliation claim was the fourth element—i.e., the existence of a causal connection between plaintiff's complaint and his termination.

We conclude that there is no question of fact that defendant terminated plaintiff because of his own conduct rather than in retaliation for his complaints. During the investigation into plaintiff's complaints, it was revealed that plaintiff made a disrespectful comment about Marsh's girlfriend, that he made a comment about having sex with Klok's mother after she was diagnosed with cancer, that he sprayed anti-spatter chemical on Reed, and that he failed to report the fact that employees were spraying the chemical on each other. There was also evidence that plaintiff tried to get Marsh fired. And, plaintiff admitted to making inappropriate jokes at work. James averred in his affidavit that he terminated plaintiff because of plaintiff's conduct. Although plaintiff argues that, rather than trying to get Marsh fired, he was merely trying to get another employee, Alan Scott, to tell the truth about Marsh. Photographs of text messages from plaintiff to Alan Scott show that plaintiff told him that he could have his chance to get Marsh terminated.

To show that his termination was caused by his complaints, plaintiff offered evidence of defendant's allegedly retaliatory termination of two prior employees. Specifically, defendant terminated Phil Garcia and Victor Davis in 2012. Although it is true that evidence shows that defendant terminated both Garcia and Davis shortly after they complained about harassment, there is no evidence that defendant terminated them *because* they complained. Rather, defendant terminated them because of their own conduct, just as defendant did here. James learned on April 26, 2012, that Garcia put his hands on Marsh and made threatening comments to him while both men were at work. Garcia complained to Phillips on May 2, 2012 that coworkers were harassing him by calling him a "spic." James averred that he terminated Garcia because he

threatened Marsh. James thereafter held a meeting with the remaining employees to stress the importance of respect at the workplace. Although Davis was terminated after he complained to Phillips about harassment concerning his race, evidence indicates that he was terminated because of falsifying his time card. Because an investigation into Davis's complaints revealed that he was harassed, James held a second meeting to instruct employees about respecting each other. Thus, it is clear that defendant terminated Garcia and Davis for their own conduct rather than retaliation. Furthermore, the law is clear that plaintiff must show "a causal connection between the protected activity and the adverse employment action," *DeFlaviis*, 223 Mich App at 436, to establish a prima facie case of retaliation. We fail to see how prior instances of alleged retaliation against other employees show a causal connection between plaintiff's complaint and plaintiff's termination, especially where—as in this case—those alleged prior instances did not even involve plaintiff.

Plaintiff's argument that evidence of Garcia and Davis's terminations is relevant under MRE 406 is without merit. MRE 406 states that "[e]vidence of the habit of a person or of the routine practice of an organization . . . is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." "Such evidence must establish a set pattern or show that something is done routinely or has been performed on countless occasions." *Laszko v Cooper Laboratories, Inc*, 114 Mich App 253, 256; 318 NW2d 639 (1982). Even if defendant's terminations of Garcia and Davis were retaliatory, this is far from a routine practice or an action "performed on countless occasions." *Id.* Rather than supporting plaintiff's claim of retaliation, evidence regarding Garcia and Davis's termination only highlights the importance that defendant placed on respect at the workplace. Garcia and Davis's complaints resulted in prompt investigations, meetings to instruct employees as to the importance of respecting each other, and suspension of bonuses for those who were found to have been harassing their coworkers. Regardless, the evidence offered by plaintiff certainly does not rise to the level of habitual or routine practices on the part of defendant.

Plaintiff also argues that defendant's lenient treatment of Marsh and Reed regarding their misconduct in relation to Garcia and Davis supports his claim of retaliation because defendant did not terminate them for their harassment of Garcia or Davis, yet plaintiff was terminated. However, the fact that defendant may have treated plaintiff more harshly than it treated Marsh or Reed with regard to prior harassment—i.e., by disciplining Marsh and Reed as opposed to terminating plaintiff—is wholly irrelevant to the question of whether plaintiff's complaint was a significant cause of his termination. This is especially true because plaintiff, Marsh, and Reed were all terminated at nearly the same time for workplace misconduct, yet plaintiff was the only one among them who made a complaint. Indeed, rather than treating plaintiff differently from the way it treated Marsh and Reed, defendant treated them all the same by terminating them. The fact that defendant gave Marsh and Reed mere warnings or bonus suspensions for past misbehavior is entirely irrelevant to plaintiff's claim of retaliation. Essentially, plaintiff presented "nothing more than pure conjecture and speculation to link" his termination to his complaint and did not establish a question of fact with regard to the causation element of his retaliation claim. *West*, 469 Mich at 188.

Plaintiff makes two additional arguments regarding retaliation. First, plaintiff argues that defendant's characterization of his comments to Alan Scott regarding Marsh as misconduct is evidence of retaliation because plaintiff was merely trying to get Alan Scott to tell the truth.

-4-

Second, plaintiff argues that after he complained, Scott Ackley's poor treatment of him is evidence of retaliation. With regard to the first argument, as discussed, the text messages from plaintiff to Alan Scott prove that plaintiff intended to get Marsh fired. With regard to the second argument, this Court has held that a supervisor treating a plaintiff more negatively after the plaintiff's complaint is not sufficient to establish the causal element of retaliation, especially when—as here—that supervisor lacked the authority to terminate the defendant. *Id.* at 186-188.

Plaintiff also argues that the trial court required him, in proving retaliation, to present evidence that defendant replaced him with a non-overweight person. However, the trial court never suggested that plaintiff had to present such evidence. Indeed, the trial court explicitly stated that such evidence would not help establish a prima facie case of retaliation. The trial court correctly stated the elements of a retaliation claim and analyzed plaintiff's claim according to those elements.

Because plaintiff failed to establish a prima facie case, summary disposition was proper on plaintiff's retaliatory discharge claim. *Latham*, 480 Mich at 111.

Finally, plaintiff argues that the trial court erred in granting defendant's motion for summary disposition with regard to his claim of hostile work environment because of weight harassment. A claim for hostile work environment under the CRA is "actionable when the work environment is so tainted that, in the totality of the circumstances, a reasonable person in the plaintiff's position would have perceived the conduct at issue as substantially interfering with employment or having the purpose or effect of creating an intimidating, hostile or offensive employment environment." *Radtke v Everett*, 442 Mich 368, 372; 501 NW2d 155 (1993). Although there appears to be no case law in Michigan concerning a claim of hostile work environment based on weight under the CRA, this Court has held that "harassment based on any of one of the enumerated classifications contained in [MCL 37.2202(1)(a)] is actionable." *Downey v Charlevoix Co Bd of Road Comm'rs*, 227 Mich App 621, 626; 576 NW2d 712 (1998). Weight is an enumerated classification contained in MCL 37.2202(1)(a). *Id.* at 626 n 2. Therefore, harassment based on weight is actionable. *Id.* at 626.

To establish a prima facie case of hostile work environment,

a plaintiff must prove: (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. [*Id.* at 629.]

With regard to the element of respondeat superior, "an employer may avoid liability 'if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment.' " *Radtke*, 442 Mich at 396, quoting *Downer v Detroit Receiving Hosp*, 191 Mich App 232, 234; 477 NW2d 146 (1991). In other words, an employer "must have notice of alleged harassment before being held liable for not implementing action." *Id.* at 396-397. However, where an employer is accused of harassment, "then the respondeat

-5-

superior inquiry is unnecessary because holding an employer liable for personal actions is not unfair." *Id.* at 397. Our Supreme Court has described an employer for purposes of determining respondeat superior under the CRA as one who "possessed the ability to hire and fire plaintiff and to control her working conditions, maintained her discipline, paid her wages, and owned the corporation that employed her." *Id.*

There is no dispute that plaintiff established the first element of his claim of hostile work environment based on weight harassment because he belonged to a protected group—the overweight—because weight is an enumerated classification in the CRA. *Downey*, 227 Mich App at 626 n 2. There is no evidence that plaintiff ever weighed less than 446 pounds while he worked for defendant. Therefore, he satisfied the first element. *Id.* at 629.

There is also no dispute that plaintiff established the second and third elements of his claim because he presented evidence suggesting that "but for the fact of his membership in a protected class, he would not have been the object of harassment . . . " *Id.* at 630. There is ample evidence that plaintiff was harassed because of his weight. Plaintiff testified that Marsh and Reed made jokes about his weight, such as writing "bacon" on his helmet and saying that McDonald's lacked hamburgers because plaintiff bought them all. Marsh, Reed, and Klok ridiculed plaintiff by taking a photograph showing two people were able to simultaneously fit into one of his shirts. Plaintiff testified that Marsh and Reed made whale noises when his wife brought lunch to work for him and that they sometimes told him he worked too slow and sweated like a pig. He testified that Scott Ackley said he was going to put a picture on the wall of the movie character "Fat Bastard" with plaintiff's head on it. Reed testified that coworkers teased plaintiff about his weight occasionally. Because the above statements and conduct clearly concerned plaintiff's weight, we conclude that the second and third elements of his claim are met. *Id.*

Although defendant argues that plaintiff failed to establish the fourth element, the trial court properly concluded that plaintiff presented evidence to create a question of fact regarding whether the weight-related harassment "interfere[d] substantially with [plaintiff]'s employment or created an intimidating, hostile, or offensive work environment." *Id.* at 631. Specifically, Reed testified that sometimes the teasing of defendant was excessive. Plaintiff testified that the harassment became so severe in late February 2013 that he did not want to go to work anymore.

However, plaintiff did not establish a question of fact with regard to the fifth element— respondeat superior. Phillips testified that she did not know of any harassment of plaintiff until he complained to her on February 25, 2013, and plaintiff provided no evidence indicating that Phillips or James ever knew of harassment against him before that date. James averred that he began investigating plaintiff's complaints immediately after plaintiff complained. There is no evidence to the contrary. As discussed *supra*, defendant terminated Marsh, Reed, Klok, and plaintiff because the investigation revealed that they were all involved in misconduct. Because evidence suggests that James and Phillips "took prompt and appropriate remedial action upon notice of the alleged hostile work environment," and because there is no evidence to the contrary, plaintiff failed to establish a question of material fact with regard to the fifth element. *Radtke*, 442 Mich at 396. Although plaintiff appears to argue on appeal that defendant's remedial action was inappropriate because it terminated him in retaliation for his complaints, plaintiff cites no law in support of his argument and has thus abandoned it. *Mettler Walloon*,

*LLC v Melrose Twp.*, 281 Mich App 184, 220; 761 NW2d 293 (2008).  Moreover, as discussed, plaintiff failed to establish a question of material fact as to whether defendant's termination of him was retaliatory, so even if respondeat superior could be shown by plaintiff's retaliatory discharge, there is no evidence of retaliation.

Alternatively, defendant argues summary disposition was proper because plaintiff's complaint was untimely filed because it was filed after the 90-day limit that plaintiff agreed to by signing defendant's employee guidebook.  The trial court did not base its decision on this statute of limitations issue in the employee handbook.  Because we conclude that the trial court properly granted defendant's motion for summary disposition on other grounds, we too decline to specifically address this issue.

Affirmed.  Defendant, being the prevailing party, may tax costs.  MCR 7.219(A).


/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Amy Ronayne Krause