# STATE OF MICHIGAN

# COURT OF APPEALS

LAURETTA DAGG,

        Plaintiff-Appellant,

v

REGINA-ANDREW DESIGN, INC.,

        Defendant-Appellee.

UNPUBLISHED
June 26, 2018

No. 338314
Wayne Circuit Court
LC No. 16-007989-CD

Before: MURPHY, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition of her worker's compensation retaliation claim under MCR 2.116(C)(10) to defendant. We affirm.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff's claim arose out of termination of her employment as a data entry clerk. Plaintiff provided shipping labels, "support[ed] order entry," entered sales orders, processed new sales orders, entered and processed clients on a computer program, maintained logs in a spreadsheet, and executed inventory and order entry processing. All tasks required plaintiff use both hands to type.

On October 6, 2015, during a paid break, plaintiff was walking in the parking lot of the strip mall next door to her workplace. As she was walking, plaintiff's foot hit a rock that was wedged into a crack in the parking lot, causing plaintiff to fall and break her right arm. Because the fall occurred on a paid break, plaintiff submitted a worker's compensation claim to defendant's worker's compensation insurer, Traveler's Insurance. Plaintiff's claim was denied because the injury "did not occur within the course and scope of employment." However, defendant did help plaintiff file a claim for short-term disability, which she received.

As a result of her injuries, plaintiff was unable to return to work for about five months. Regardless, defendant held her position open. During plaintiff's absence, defendant distributed plaintiff's tasks to other employees. Additionally a software program used for processing orders and managing inventory called ERP Software Solution was implemented. Introduction of this software reduced the amount of data entry and staffing. It was estimated that by April 2016, a position for data entry would be obsolete.

-1-

Plaintiff notified defendant at the end of March 2016 that she would be returning to work in April. On April 5, 2016, plaintiff was advised by her doctor that, because she was experiencing pain when her medication was reduced, she would need to continue the medication and restrict her work responsibilities. Plaintiff's doctor limited her to four hours of data entry with both hands, and then wanted her to do something else, such as answering the phone with her healthy hand and arm, for the rest of the day. These restrictions were to last three months. Plaintiff's doctor faxed a copy of plaintiff's restrictions that same day. Upon receipt, defendant determined that plaintiff would be unable to perform the basic job duties required of a data entry clerk. That same day, plaintiff received the following email terminating her employment:

> Our understanding was that your return to work would be granted without work restrictions. Employment with Regina Andrew Design Inc is at will; therefore, in light of the recent information regarding work restrictions we sadly regret to inform you we are unable to accommodate [sic] your employment further with Regina Andrew Design Inc. Your employment with Regina Andrew Design Inc is terminated effective immediately.

Plaintiff filed a complaint, alleging that she had made a claim for worker's compensation benefits and was terminated in violation of the anti-retaliation provision in MCL 418.301(13). Plaintiff maintained that defendant knew she had exercised her rights and her claim was a "significant factor" in defendant's decision to terminate her. Plaintiff alleged that a causal connection existed between her claim and her termination, and that defendant's reasons for her termination were pretextual. Defendant moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiff's claim of retaliation was speculative, and that plaintiff could not establish a prima facie case of retaliation, which requires proof that plaintiff was qualified for her position at the time of the termination. Defendant also argued that plaintiff could not establish a causal connection between her worker's compensation claim and her termination. Finally, defendant argued that plaintiff had not produced sufficient evidence from which a trier of fact could reject its legitimate, nondiscriminatory business reasons for plaintiff's termination. Following a hearing on defendant's motion, the trial court entered an order summarily dismissing plaintiff's claims. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo the circuit court's grant of summary disposition pursuant to MCR 2.116(C)(10). *Spiek v Dep't of Trans*, 456 Mich 331, 337; 572 NW2d 201 (1998). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "The pleadings, affidavits, depositions, admissions, and other admissible documentary evidence submitted by the parties must be considered in the light most favorable to the nonmoving party." *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 712; 737 NW2d 179 (2007). "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Maiden*, 461 Mich at 121. "Summary disposition is proper under MCR 2.116(C)(10) if the affidavits and other documentary evidence show that there is no genuine issue concerning any material fact and

that the moving party is entitled to judgment as a matter of law." *Kennedy*, 274 Mich App at 712.

The purpose of the Worker's Disability Compensation Act ("WDCA"), MCL 418.101 *et seq.*, is to " 'promptly deliver benefits to employees injured in the scope of their employment.' " *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 272; 826 NW2d 519 (2012), quoting *Dunbar v Mental Health Dep't*, 197 Mich App 1, 6; 495 NW2d 152 (1992). Under MCL 418.301(13), an employer may not discharge an employee "because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act." *Cuddington*, 298 Mich App at 272.

> To establish a prima facie case of retaliation under the WDCA, an employee who has suffered a work-related injury must present evidence: (1) that the employee asserted a right to obtain necessary medical services or actually exercised that right, (2) that the employer knew that the employee engaged in this protected conduct, (3) that the employer took an employment action adverse to the employee, and (4) that the adverse employment action and the employee's assertion or exercise of a right afforded under MCL 418.315(1) were causally connected. [*Id.* at 275.]

In moving for summary disposition, defendant argued that plaintiff failed to create a question of fact regarding the fourth prong. Specifically, defendant argued that plaintiff's termination and her claim for worker's compensation were not causally connected. Because "[r]arely will an employer openly admit having fired a worker in retaliation for exercising a right of employment," a plaintiff may present circumstantial evidence to establish a "rebuttable prima facie case of retaliation" and shift the burden "to the defendant to articulate a legitimate, nondiscriminatory reason for its action." *Id*. at 276-277.

## III. TEMPORAL RELATIONSHIP BETWEEN WORKER'S COMPENSATION CLAIM AND PLAINTIFF'S TERMINATION

On appeal, plaintiff argues that the temporal relationship between her worker's compensation claim and her termination established the requisite causation. Indeed, plaintiff was injured in October 2015 (during a paid break from work), a worker's compensation claim was filed shortly thereafter and denied, and plaintiff filed an application for a hearing related to that decision in December 2015. In April 2016—six months after her injury and claim, and four months after her application for a hearing—defendant terminated plaintiff's employment. Plaintiff had been on unpaid leave recovering from her injuries related to the fall. When she arranged with defendant to return to her data entry position, her doctor restricted her to only four hours a day of data entry. Defendant explained that it terminated plaintiff because she was a data entry clerk and it needed her to work full time at data entry.

Despite the fact that plaintiff's termination remotely followed her claim and application for a hearing under the WDCA, any argument that the protected activity was the actual cause of the adverse employment action is mere conjecture or speculation. *Kaminski v Grand Trunk Western R Co*, 347 Mich 417, 422; 79 NW2d 899 (1956), quoting *City of Bessemer v Clowdus*,

261 Ala 388, 394; 74 So 2d 259 (1954) ("As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only."). "[A] temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action." *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003). "Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *Id.* "[A plaintiff] must show something more than merely a coincidence in time between protected activity and adverse employment action." *Id.* Participation in the protected activity must be a "significant factor" in the employer's adverse employment action. *Barrett v Kirtland Community College*, 245 Mich App 306, 315; 628 NW2d 63 (2001). Plaintiff has failed to point to any evidence demonstrating that the protected activity was a factor, let alone a "significant factor," in defendant's decision to terminate her. Plaintiff's conjecture that the six-month coincidence in time between her initial protected activity and the adverse employment action does not create a question of fact for the jury.

Plaintiff relies on *Cuddington* to support her claim, but that case bears no similarity to the facts here. In *Cuddington*, the plaintiff was injured during the course of his employment. *Cuddington*, 298 Mich App at 268. He did not go to the hospital immediately after the accident. The next morning, he had difficulty getting out of bed and sought medical attention. *Id.* His employer told him that he must come to work or he would be fired. *Id.* The plaintiff saw his doctor instead of reporting for work and was fired the next day; the stated reasons for his termination included the failure to call before his shift and insubordination. *Id.* at 269. This Court nevertheless concluded that the employer's threat supported an inference of causation. *Id.* at 277. As plaintiff argues, like the termination in *Cuddington*, her termination followed a right exercised under the WDCA (albeit delayed by six months and not just one day like the plaintiff in *Cuddington*). But, in any event, her case lacks any similar threat. Rather, plaintiff admitted that she was never told that, if she filed a worker's compensation claim, she would be treated less well.

Plaintiff also relies on *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 442-443; 566 NW2d 661 (1997), to argue that a violation of defendant's handbook supported an inference of causation. In *DeFlaviis*, the plaintiff filed an age-discrimination lawsuit against his employer. Thereafter, his supervisor gave a negative reference to a prospective employer, which resulted in plaintiff losing the opportunity to work for that employer. *Id.* The supervisor's remarks to the prospective employer were, in part, false, and in violation of the employer's policy not to reveal reasons for an employee's discharge. *Id.* This Court concluded that the violation of the policy supported an inference that the negative reference was retaliation for the age-discrimination lawsuit. *Id.*

As plaintiff argues, defendant's handbook provides that it is its policy to comply with the Americans with Disabilities Act Amendments Act ("ADAAA"), which includes a requirement to provide "reasonable accommodations for individuals with disabilities, unless it would cause undue hardship." Plaintiff has not established a genuine issue of material fact that defendant violated its policy here. Defendant's management team averred at their depositions that

plaintiff's responsibilities had been divided among other employees for six months. Overtime was paid to these employees for completing plaintiff's work. When plaintiff informed defendant that she could not return to her data entry work full time, the management team decided that further burdening other employees with plaintiff's responsibilities would be "excessive," particularly in light of an expected increase in business at that time. Plaintiff offered no evidence to the contrary that accommodating her restrictions would not have been an undue hardship. Absent a violation of defendant's handbook in terminating plaintiff, this case is not analogous to the facts in *DeFlaviis*, and a reasonable trier of fact could not infer that the termination bore any causal relationship with the protected activity.

Plaintiff claims that her satisfactory work record before the protected activity supports a causal connection between the protected activity and her termination. She relies on *Henry v Detroit*, 234 Mich App 405; 594 NW2d 107 (1999), in which a police officer with an excellent work record participated in a protected activity, his supervisor was upset and believed the protected activity would hurt the city financially, and the officer was subsequently forced to retire or be demoted for poor work performance. *Id.* at 407-408, 414. This Court concluded that there was a question of fact whether his job performance or his protected activity was the cause of the adverse employment action. *Id.* at 414. Plaintiff's case is distinguishable in several respects. First, defendant never expressed dissatisfaction with plaintiff's exercise of her rights under the WDCA like the supervisor in *Henry*. Second, the reason for the police officer's termination in *Henry* was poor job performance, but plaintiff's work record is not at issue in this case. There is no dispute that she performed satisfactorily when she was able to work full time. Rather, defendant terminated plaintiff because her work restrictions prevented her from performing her job on a full-time basis. Thus, plaintiff's work record before her injury does not support an inference of causation.

Finally, plaintiff argues that defendant was adversely affected by her protected activity, which lends to an inference of causation. Plaintiff cites *Debano-Griffin v Lake Co*, 493 Mich 167, 178; 828 NW2d 634 (2013). In that case, the plaintiff's position was eliminated mere days after she blew the whistle on a $50,000 funds transfer that she maintained was in violation of a county millage proposal. This Court noted:

> In this case, the board heeded plaintiff's advice and returned the transferred funds back into the ambulance fund. The fact that the board remedied its prior and potentially unlawful action lends support to plaintiff's position that defendants, because of plaintiff's complaints, were forced to do something that they would not have otherwise done and, thus, a reasonable inference may be drawn that the board was motivated to eliminate plaintiff's position because of her complaints. [*Id.*]

Unlike *Debano-Griffin*, in which the defendant was "forced" to act differently because of the plaintiff's protected activity, thereby supporting an inference of retaliation, plaintiff cannot point to any evidence that a possibility of an increase in insurance rates—which may occur following any worker's compensation claim—motivated her termination. William Roberts, the director of operations, agreed with plaintiff's attorney at his deposition only that he knows that it is "a possibility" that worker's compensation claims can affect the cost of premiums. But plaintiff acknowledged that defendant never told her that she was fired because her injury would

increase its premiums. Moreover, during the unemployment insurance proceedings, James Bonomo, the chief operating officer, told the unemployment insurance agency that he "fe[lt] bad" for plaintiff and he believed that she was entitled to unemployment benefits despite any effect on insurance. Defendant's support of plaintiff's unemployment insurance benefits in the face of the possibility of increased rates weighs against any inference that defendant would terminate plaintiff because her protected worker's compensation activity increased its worker's compensation premiums.

In sum, we conclude that plaintiff failed to establish a genuine issue of material fact regarding whether a causal connection existed between her protected activity under the WDCA and the adverse employment action. Therefore, she failed to set forth a prima facie case of retaliation.

## IV. PRETEXT

Plaintiff also argues on appeal that defendant's reason for terminating her was pretextual. We need not address this argument because plaintiff failed to establish a prima facie case of retaliation. Moreover, even if plaintiff had established a prima facie case of retaliation, we would conclude that plaintiff could not create a question of fact whether defendant's reason for terminating her was pretext for unlawful retaliation. See *Debano-Griffin*, 493 Mich at 176.

Affirmed.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause