*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BODASHIA GRIMM,

       Plaintiff-Appellant,

v

DEPARTMENT OF CORRECTIONS, JONATHAN
HUGLE, and CHARLES LEVENS,

       Defendants-Appellees.

UNPUBLISHED
May 19, 2022

No. 356655
Wayne Circuit Court
LC No. 19-003780-CD

Before: JANSEN, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

In this action under the Elliott-Larsen Civil Rights Act (CRA), MCL 37.2101 *et seq.*, plaintiff appeals by right the trial court's opinion and order granting summary disposition in favor of defendants. On appeal, plaintiff argues that the trial court erred when it concluded that defendants were entitled to summary disposition on plaintiff's claims of disparate treatment, hostile work environment, and retaliation. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff and defendants Jonathon Hugle and Charles Levens worked together in the Michigan Department of Corrections (MDOC) absconder recovery unit (ARU). The ARU is responsible for apprehending parole and probation absconders and prison escapees. Plaintiff and Hugle were investigators and maintained a caseload of individuals they were responsible for investigating and eventually arresting. Levens became a supervisor in 2012 and supervised plaintiff and Hugle beginning in 2014.

In 2013, Hugle was partnered with Clinton Bradley, who was romantically involved with and engaged to plaintiff for a time. According to Bradley, during the time he was partnered with Hugle, Hugle called plaintiff a "black b***h" and said that she only got her job with the ARU by working "on her knees," implying that plaintiff got her job through sexual favors. Bradley told plaintiff about these comments in 2013. Plaintiff also heard of similar comments by Hugle from a few other investigators and a police officer over the next several years, but none after 2017.

Hugle was known for being difficult to work with, and Levens took many informal complaints about Hugle. In May 2017, plaintiff made a written complaint against Hugle to Levens via e-mail complaining that Hugle was not being a team player. Both plaintiff's and Hugle's account of the events underlying the complaint are essentially the same. Hugle did not want plaintiff assisting on his cases while he was on restricted duty, meaning he could not do field work, and sought to prevent her from doing so. In his response e-mail to plaintiff's complaint, Levens wrote that he had heard from others that plaintiff was on a "witch hunt" for Hugle, and he warned plaintiff that if she continued to make baseless complaints, she could subject herself to complaints of a hostile work environment or inhumane treatment of an employee. Plaintiff also made a formal complaint with the MDOC alleging that Hugle created a hostile work environment through his actions related to this incident. On the complaint form, plaintiff did not indicate that she was discriminated against and wrote "N/A" in the field for explaining why she felt discrimination occurred.

In August 2017, plaintiff was injured in a training exercise when she fell off a fence and hurt her shoulder. She was placed on restricted duty and had limits for lifting and pulling objects of certain weights. According to plaintiff, it was Levens's informal policy that if one was placed on restricted or light duty, they could do their jobs in the field as long as they did not get hurt. In late October 2017, plaintiff was injured again when she slipped on the front steps of a house during an investigation and broke her ankle. After this occurred, Levens told plaintiff that she could not work in the field again until she was off restricted duty. Levens was not sure if there was an official policy, but it was his expectation that an investigator on light or restricted duty would report to an office each day unless he or she took leave time.

In early December 2017, Levens conducted routine, monthly case audits of the investigators he supervised. In the audits, two of each investigator's cases were pulled at random, and Levens assessed whether the investigators were properly investigating those cases and documenting their actions. It was common for Levens to find issues with one of an investigator's cases, and the investigator was allowed to fix the issue without any formal process or discipline. When he conducted the December 2017 audits, he found that plaintiff and another investigator, Steven Schabel, had substantial problems within the audited cases. Prior to this, Levens never had one investigator fail an audit, let alone two. Levens decided to audit all of plaintiff's and Schabel's cases, and he referred the matter to MDOC's internal affairs office for investigation.

The audit into plaintiff's full caseload showed almost no activity in her cases for several months, and Levens became suspicious that plaintiff was not doing any work at all. Levens retrieved plaintiff's computer log-in activity over the prior few months, and discovered that, beginning in late October 2017, plaintiff had barely logged into the networks investigators use daily for a five to seven-week period in which she claimed to be working. On January 2, 2018, Levens went to find plaintiff in the office she was assigned to work from. He could not find her and was told that no one there had seen plaintiff for weeks. Levens also could not reach plaintiff by phone. During his telephone call attempts, plaintiff was on a flight home from Florida, which arrived at approximately 10:00 a.m. on January 2nd. Plaintiff, who reported that she worked from 8:00 a.m. to 4:30 p.m. that day, explained that she worked on the plane and she missed phone calls from Levens because her phone was charging. On January 8, 2018, Levens conducted surveillance of plaintiff's home, where she claimed to be working remotely from her state-owned vehicle, to see if she was actually working. There were approximately three inches of fresh snow that

morning, and Levens saw plaintiff's work vehicle was in her driveway, with no footprints to indicate she had entered the van. This led him to believe she was not doing any work that day.

Around this time, Levens informed plaintiff's supervisor on the MDOC honor guard that plaintiff would no longer participate in the program because of her failure to complete her work. The honor guard was a nonpaid, volunteer position, and plaintiff was the only person from the ARU on the honor guard. Also, Levens assigned plaintiff to work on a different team, which included her former fiancé, Bradley, and required her to backup Hugle. Plaintiff had to backup Hugle about four times and felt uncomfortable doing so. Plaintiff stated this caused her extreme stress and emotional distress, for which she sought treatment. Plaintiff's doctor recommended that she take approximately two weeks off work, which she did in February 2018.

On March 13, 2018, plaintiff filed a charge of discrimination with the MDOC and the Equal Employment Opportunity Commission (EEOC) complaining of alleged race and sex-based discrimination and retaliation. Plaintiff complained that Hugle created a hostile work environment, and, because she complained, she was subjected to increased scrutiny and an audit, and was required to work in the office during restricted duty while white males were not required to do so.

Plaintiff resigned from MDOC on April 6, 2018. The investigation into plaintiff's work concluded on June 18, 2018, and sufficient evidence was found to support the allegations made against her. Plaintiff then sought employment with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the United Stated Customs and Border Protection (CBP) agency.

Plaintiff was made a tentative offer for employment with the ATF. The position required a background check, and plaintiff signed a form authorizing others to supply information to the ATF about her employment and disciplinary history. Plaintiff sent a text message to Levens telling him that it would be illegal for him to provide any information about her to federal agencies. Levens told this to the ATF, and the ATF responded by providing him with plaintiff's disclosure form. When interviewed by the ATF, Levens told them that plaintiff was under investigation when she resigned. On July 20, 2018, the ATF sent plaintiff a letter stating that, because the information obtained in her background check was not "sufficiently extenuated or mitigated," she would not be getting the position. Levens gave the same information to CBP, and that agency found that the information had been mitigated. CBP then offered plaintiff a job, which she accepted.

Plaintiff's complaint alleged disparate treatment, a hostile work environment, and retaliation under the CRA.[1] On August 12, 2020, defendants moved for summary disposition on all counts, arguing that Hugle's comments did not create a hostile work environment and plaintiff could not show the employment actions regarding plaintiff's work could support a disparate treatment or retaliation claim. On March 3, 2021, the trial court issued its opinion and order granting summary disposition in favor of defendants on all counts.

---

[1] The complaint also included a claim against Levens for constitutional violations, which was dismissed without prejudice because Levens was never served in this case.

## II. STANDARD OF REVIEW

A trial court's determination on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion made under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and when the proffered evidence fails to establish a genuine issue of material fact, the moving party is entitled to judgment as a matter of law." *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). When considering such a motion, this Court "considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, in a light most favorable to the party opposing the motion." *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013). A genuine issue of material fact exists when the record presents an issue of fact over which reasonable minds may differ. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018).

## III. DISPARATE TREATMENT

Plaintiff argues on appeal that the trial court erred when it granted summary disposition in favor of defendants on her claim of disparate treatment on the basis of her race and sex. We disagree.

The CRA prohibits employers and other service providers from engaging in discriminatory practices. MCL 37.2102. The CRA provides:

> (1) An employer shall not do any of the following:
>
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status. [MCL 37.2202(1)(a).]

Plaintiff alleges disparate treatment on the basis of both her race and sex. A disparate treatment claim is one that alleges intentional discrimination on the basis of belonging to a protected class. *White v Dep't of Transp*, 334 Mich App 98, 107-108; 964 NW2d 88 (2020). "Disparate treatment requires a showing of either intentional discrimination against protected employees or against an individual plaintiff." *Duranceau v Alpena Power Co (After Remand)*, 250 Mich App 179, 182; 646 NW2d 872 (2002). As this Court stated in *Duranceau*, which involved a claim of disparate treatment based on sex:

> To avoid summary disposition under the disparate treatment theory, the plaintiff must present sufficient evidence to permit a reasonable juror to find that for the same or similar conduct the plaintiff was treated differently from a similarly situated male employee. Gender must be proved to be a determining factor in the allegedly discriminatory decision. [*Id*. (citation omitted).]

In intentional discrimination cases, a plaintiff can prove her claim by using either direct or indirect evidence. *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). Direct evidence is that "which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. (quotation marks and citation omitted).

-4-

An example of direct evidence of discrimination is where a decisionmaker uses racial slurs. *Graham v Ford*, 237 Mich App 670, 677; 604 NW2d 713 (1999). When there is no direct evidence, a plaintiff may prove intentional discrimination through "circumstantial evidence." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 607-608; 886 NW2d 135 (2016). A plaintiff does so under the *McDonnell Douglas*[2] burden-shifting framework. *White*, 334 Mich App at 107.[3]

Plaintiff contends that Levens, a decisionmaker, knew about and tolerated Hugle's racist and sexist comments, and this is direct evidence of her claim. She argues that, out of favoritism to Hugle and because of Levens's friendship with him, Levens ignored plaintiff's complaints and retaliated against her. Plaintiff also contends that several other allegedly adverse employment actions against her support the conclusion there is direct evidence of discrimination.[4]

Plaintiff argues that, under *Graham*, 237 Mich App at 681, this Court should find direct evidence of discrimination by defendants. In that case, a number of MDOC employees, white and black males, brought a claim of racial discrimination against their supervisor, who was black. *Id*. at 675-676. The plaintiffs argued that the supervisor displayed discriminatory bias against white workers, as well as black workers who he believed had too close of relationships with white workers. *Id*. This Court held that the plaintiffs established through direct evidence that the supervisor was racially biased in employment decisions. *Id*. at 681. To support that conclusion, this Court cited 15 distinct instances in which the supervisor used racially biased language or racially biased motivation in decision-making. *Id*. at 678-681.

In the case before us, the record does not support that there was direct evidence that a decisionmaker displayed a predisposition to discriminatory bias. See *id*. at 677. This case is distinguishable from *Graham* because, in *Graham*, the discriminatory comments and actions were taken by a decisionmaker. There is no evidence that the decisionmaker in this case, Levens, had knowledge of Hugle's racist or sexist comments, let alone shared a discriminatory bias. According to Hugle, he and Levens were not friends outside of work. Levens testified that he never heard about Hugle's racist and sexist comments until his deposition in this case. Plaintiff complained verbally to a supervisor about Hugle's race-based conduct, but that complaint was that Hugle was disrespectful to black and Hispanic families while in the field, not that he was making racist or sexist comments to her. That supervisor told plaintiff that she "understands" plaintiff's complaint, rather than displaying she likewise was predisposed to discrimination. Plaintiff also testified that her EEOC complaint was the first time she complained of a hostile work environment or discrimination. There is no evidence that anyone with decision-making authority over plaintiff was aware of, let alone tolerated or perpetuated, any racist or sexist conduct. Thus, plaintiff cannot

---

[2] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

[3] On appeal, plaintiff argues that in the absence of direct evidence, she may only prove her disparate treatment claim through the *McDonnell Douglas* framework. Thus, we do not address whether she may otherwise show her claim through different circumstantial evidence.

[4] Plaintiff relies on the same arguments to support her circumstantial evidence claim. These arguments will be addressed later, as they do not support a claim of direct evidence or make out a case of discrimination under the *McDonnell Douglas* framework.

show that her supervisors' actions were motivated in part by discriminatory animus, and this argument lacks merit.

Because there is no direct evidence of discrimination, plaintiff's claim must proceed under the *McDonnell Douglas*[5] burden-shifting framework. See *White*, 334 Mich App at 107. Under this framework, a plaintiff must first set forth a prima facie case of discrimination. *Id*. at 108. Once the plaintiff makes out a prima facie case of discrimination, a presumption arises that the employer's actions were discriminatory. *Id*. The employer then must offer a legitimate, nondiscriminatory reason for the employment action, which, if given, rebuts the presumption of discrimination. *Id*. Once the presumption is rebutted, the burden shifts back to the plaintiff to show that the proffered reason was actually pretext for discrimination. *Id*. To survive a motion for summary disposition, a plaintiff must show that a rational trier of fact could conclude that discrimination was a motivating factor in taking the adverse employment action. *Id*. at 109.

Establishing a prima facie case of discrimination requires a plaintiff to show that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) she was treated differently than similarly situated employees who were not in a protected group. *Hazle*, 464 Mich at 463. There is no dispute that plaintiff belongs to protected classes on the basis of her race and gender and that she was qualified for her job,[6] thus satisfying the first and third *Hazle* elements. However, plaintiff cannot show that she was treated differently from other similarly situated employees, the fourth *Hazle* element. Moreover, for the most part, plaintiff cannot show the second *Hazle* element as well.

The second *Hazle* element requires a showing that the complained-of employment action was "materially adverse." *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 363; 597 NW2d 250 (1999). Examples of materially adverse employment actions include: "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id*. (quotation marks and citations omitted). More specifically, a plaintiff must show "(1) the action must be materially adverse in that it is more than mere inconvenience or an alteration of job responsibilities, and (2) there must be some objective basis for demonstrating that the change is adverse because a plaintiff's subjective impressions as to the desirability of one position over another are not controlling." *Id*. at 364 (quotation marks, citation, and brackets omitted).

Most of the conduct plaintiff complains of does not amount to an adverse employment action. First, the investigation into plaintiff's conduct and the referral to internal affairs was not an adverse employment action. The investigation into plaintiff was commenced after she failed a routine audit. An investigation that accords with established procedures is not an adverse employment action. See *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 314; 600 NW2d 351 (2003). The investigation into plaintiff required her to be interviewed twice by investigators. This

---

[5] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

[6] Levens testified that plaintiff was one of the highest performing employees he supervised, he had given her top performance reviews, and he had recommended her for a promotion.

does not show that the investigation was more than a mere inconvenience, and plaintiff's subjective belief that the investigation was unfair is not controlling. The investigation was not an adverse employment action.

Next, requiring plaintiff to work from an office was not an adverse employment action. It was, at most, a "mere inconvenience or an alteration of job responsibilities." *Wilcoxon*, 235 Mich App at 364. The requirement for plaintiff to work from an office while on restricted duty can barely be considered an alteration in her job responsibilities, as the only thing that changed was the location from where plaintiff had to work. While this may have posed some inconvenience, the requirement was apparently temporary; there is no evidence that plaintiff would have been required to work from an office once she was off restricted duty. This requirement was not an adverse employment action.[7]

Next, Levens's removal of plaintiff from the honor guard was also not an adverse employment action. Plaintiff was not terminated from her position or demoted. The honor guard was a volunteer position, activities occurred outside work hours, and it did not come with any additional pay or benefits. While arguably a reduction in responsibilities, the reduction was not material because it did not affect her actual job. *Wilcoxon*, 235 Mich App at 363. Plaintiff maintained all of her responsibilities as an investigator. Further, Levens testified that he would allow plaintiff to return to the honor guard once she caught up on her caseload for a few months. Her removal from the honor guard was not an adverse employment action.

Next, Levens's decision to change plaintiff's work partner, so that she worked with Bradley and backed up Hugle, was not an adverse employment action. Defendants' argument is well-received that employees' personal decisions outside of work should not dictate whom a supervisor is allowed to partner together. While plaintiff and Bradley had been romantically involved, they agreed that they worked well together. Further, although plaintiff had complained about Hugle and did not want to work with him, she also acknowledges that many ARU investigators expressed difficulty working with Hugle and made reports similar to hers about his conduct. Levens had only approximately 27 investigators working under him at a given time. Levens had limited options in assigning partners and which teams backed up one another. And those options would be even more limited if he attempted to only assemble teams around Hugle with only people who did not find him difficult to work with. It cannot be said that plaintiff's new partner assignment was more than a mere inconvenience.

Next, plaintiff argues that a postemployment review to potential employers was an adverse employment action. Plaintiff is correct that a negative postemployment review can be an adverse employment action, at least in the context of a retaliation claim. See *DeFlaviis v Lord & Taylor*,

---

[7] We recognize that federal courts have concluded that, in some cases, a requirement that an employee "be in the office during working hours constitutes an adverse employment action." See, e.g., *Henson v Canon Business Solutions, Inc*, 69 F Supp 3d 730, 738 (ND Ill, 2014). In our view, however, this is not one such case because the requirement was apparently temporary. Regardless, for the reasons explained below, plaintiff's disparate treatment claim fails because she cannot satisfy the fourth *Hazle* element.

*Inc*, 223 Mich App 432, 436, 441; 566 NW2d 661 (1997). However, plaintiff has not identified any false statements made to her potential employer, the ATF.[8] Whether a negative but nonetheless true postemployment review may constitute an adverse employment action has divided the federal courts. See *Mitchell v Mercedes-Benz US Int'l, Inc*, 2015 WL 1310721 (ND Ala, 2015) (identifying the split of authority). Assuming that it may constitute an adverse employment action and that this allegation satisfies the second *Hazle* element, as explained below, her disparate treatment claim still fails because she cannot show the fourth *Hazle* element.

Finally, plaintiff was not constructively discharged and did not suffer an adverse employment action. Constructive discharge is a defense to an argument that a plaintiff voluntarily left employment. *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 471; 957 NW2d 377 (2020). "A constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation or, stated differently, when working conditions become so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign." *Id*. at 471-472. Plaintiff fails to show that she was constructively discharged because there is no evidence that there was a deliberate attempt to make plaintiff's working conditions intolerable. Plaintiff was investigated after failing her routine audit. The pending investigation into plaintiff's work was not enough to support a constructive discharge, given that coworker Schabel did not contest his investigative finding, and received minor discipline. Although the investigation into plaintiff amounted to the more serious charge of failing to perform duties, plaintiff does not explain how the results of her investigation would have resulted in discipline more serious than Schabel's, which would lead to the resignation of a reasonable employee in her position. Plaintiff also argues that her partner change contributed to her discharge, but as discussed previously, that action was a mere inconvenience. Plaintiff has not alleged any other conduct militating her to resign. And there is no evidence any of these actions were taken to deliberately make plaintiff's working conditions intolerable. *Id*. at 471-472. Plaintiff's argument that she was constructively discharged fails.

Accordingly, most of plaintiff's arguments concerning the second *Hazle* element are meritless. However, it is arguable that she satisfied this element through her allegation that she received a negative postemployment review. In any event, this is not dispositive because plaintiff cannot show under the fourth and final *Hazle* element that she was treated differently from other similarly situated employees. For a plaintiff to be similarly situated to a coworker, she must be similar in "all of the relevant aspects" and their employment situations must have been "nearly identical." *Town v Mich Bell Tel Co*, 455 Mich 688, 699-700; 568 NW2d 64 (1997), abrogated in part on other grounds by *Gross v FLB Fin Servs, Inc*, 557 US 167; 129 S Ct 2343; 174 L Ed 2d 119 (2009). Plaintiff cannot show that she was similarly situated to any of her coworkers in the aspects relevant to this case.

---

[8] Plaintiff also argues that Levens' postemployment review to the CBP was an adverse employment action. Plaintiff contends Levens should not have told the CBP that he had the opinion plaintiff lived beyond her means. Levens explained he was asked for an opinion, offered it, and backed it up with facts. We decline to further address the CBP review because plaintiff ultimately obtained a job with the CBP.

Plaintiff was not similarly situated to Schabel, the other investigator who was subject to a full case audit, or to other employees who were "investigated" after making a complaint. First, plaintiff and Schabel were singled out for a full audit because it was the first time Levens had seen two investigators fail the monthly audit of cases. The two investigations began under the same circumstances, with plaintiff being treated the same as Schabel. The investigation into plaintiff only became, arguably, different from Schabel's once the investigations revealed different allegations against each. Schabel was referred for an internal affairs investigation only into his failure to initiate, follow up on, and document investigations, whereas the main allegation against plaintiff was that she was not working at all. As such, plaintiff has not identified any other similarly situated investigators who were differently investigated for failing an audit or failing to work.

Plaintiff also argues that the response from Levens to her e-mailed complaint against Hugle was treated differently than the complaints of similarly situated coworkers. More specifically, plaintiff argues that she was threatened with an investigation for making a complaint while others were not. However, a complaint about sexual harassment made by Hugle ended similarly to plaintiff's complaint. Hugle made a complaint that he was being sexually harassed by a superior. After making the complaint, Hugle was reprimanded for failing to bring a timely complaint and warned not to bring false allegations. Plaintiff's complaint against Hugle also ended in her being warned against making baseless complaints after others would not back up her story. Accordingly, plaintiff has not shown she was more thoroughly investigated for making a complaint about another's conduct than other similarly situated employees.

Plaintiff also was not similarly situated to the other male employees who were allowed to work remotely. For one thing, assuming Levens did have a policy of allowing field work while on restricted duty as long as that person did not get hurt, plaintiff did in fact get hurt again while on restricted duty. There is no evidence that the other males were hurt in the field while on restricted duty. Indeed, two of the coworkers plaintiff identified were not injured at all. One was undergoing cancer treatment, and the other was recovering from a heart attack. Another white male she identified shot himself in the hand, but took worker's compensation benefits while plaintiff did not. Bradley testified that he was allowed to work from a mobile office while on restricted duty. However, again, he was not injured while on restricted duty. Further, plaintiff acknowledged she was not told to report to the office until January 2018 after the investigation against her commenced. While none of the other identified white males were told to report to an office, none were under investigation for failing to perform work while working remotely. Thus, plaintiff cannot show that she was treated less favorably than other similarly situated employees.

To summarize, plaintiff fails to establish a prima facie case of discrimination because she cannot show that she was treated differently from other similarly situated employees, the fourth *Hazle* element. In addition, with respect to all of her allegations but for the allegation concerning a negative postemployment review, plaintiff cannot show the second *Hazle* element.

Even if plaintiff had established a prima facie case of discrimination through the *Hazle* elements, she cannot show that defendants' proffered reasons for their actions were pretext for discrimination. A plaintiff can establish an employer's proffered reason for an employment action is pretext "(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors,

by showing that they were jointly insufficient to justify the decision." *Major v Newberry*, 316 Mich App 527, 542; 892 NW2d 402 (2016). Plaintiff cannot show a discriminatory intent regarding the employment actions she complains of or that defendants' rationale for any of those actions falls into one of the enumerated categories.

Defendants' proffered reason for most of the employment actions it took regarding plaintiff was that they stemmed from the results of a legitimate audit and investigation into plaintiff's work. More specifically, defendants argue that each of the actions plaintiff complains of, with one exception, was appropriate given the evidence plaintiff was not working while on restricted duty. In response, plaintiff argues that her failure of the routine audit was pretext for discrimination because she had a good track record from her employment with MDOC. There is no dispute that plaintiff had a good track record. Plaintiff appears to argue that defendants' proffered reasons had no basis in fact or were insufficient to motivate the action. But disputing the employer's rationale is not enough. A plaintiff must also present evidence to allow a rational trier of fact to conclude discrimination was a motivating factor in the employment actions. *White*, 334 Mich App at 108-109. Plaintiff does not present evidence that Levens's decision to audit and investigate plaintiff's work was based on race or gender, rather than plaintiff's performance.

Plaintiff next argues that there was no justification for her having to work in an office. Given there was ample evidence plaintiff was failing to perform her duties while working remotely, it cannot be said there was insufficient reason to require her to work from an office. Plaintiff also argues that Levens's postemployment review to the ATF was pretext for discrimination. As explained previously, Levens's statements were factual, or were opinions based in fact. Further, plaintiff signed a disclosure form authorizing her employer to give the ATF information about her tenure there. The proffered reasons had bases in fact, and plaintiff has produced no evidence that a discriminatory bias contributed to any of Levens' actions. Plaintiff has not established any of the proffered reasons for defendants' actions were pretext for discrimination.

Last, plaintiff argues that the proffered reasons for her partner reassignment were pretext for discrimination. Defendants' explanation of plaintiff's partner change is somewhat less clear than for her other complaints. They asserted at one point that plaintiff and Bradley worked well together and, at another point, that it was a matter of discretion for Levens. In any event, plaintiff fails to show the proffered reasons were pretextual and concealing discriminatory animus regarding her partner reassignment. Plaintiff has not shown the proffered reasons had no basis in fact. And she has not brought forth any evidence tying a discriminatory motive or reason to her partner change. Plaintiff has failed to show that any of defendants' proffered reasons were pretext for discrimination.

For these reasons, plaintiff has not established direct evidence of discrimination, a prima facie case for employment discrimination under a disparate treatment theory, nor has she shown any of defendants' proffered reasons for their actions were pretext for discrimination. Accordingly, the trial court did not err when it granted summary disposition in favor of defendants on this issue.

IV. HOSTILE WORK ENVIRONMENT

Plaintiff argues on appeal that the trial court erred when it granted summary disposition in favor of defendants on plaintiff's hostile work environment claim. We disagree.

A hostile work environment can be created on the basis of any protected characteristic. *Downey v Charlevoix Co Bd of Rd Comm'rs*, 227 Mich App 621, 626; 576 NW2d 712 (1998). Plaintiff claims that she was subjected to a hostile work environment on the basis of her race and sex. To establish a claim of hostile work environment, a plaintiff must show:

> (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. [*Id*. at 629.]

Whether a work environment is hostile is established by the totality of the circumstances, which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Quinto v Cross & Peters Co*, 451 Mich 358, 370 n 9; 547 NW2d 314 (1996). Conclusory allegations are not enough to survive summary disposition; a plaintiff must bring forth evidence to show that "a reasonable person could find that a hostile work environment existed." *Id*. at 371-372.

Plaintiff makes three interrelated arguments that are relevant to her hostile work environment claim: (1) Hugle made racist and sexist comments about her, (2) which caused her emotional distress that interfered with her ability to work, and (3) defendants took no prompt remedial action. There is no serious dispute that plaintiff can satisfy the first three elements of her hostile work environment claim. She is a member of protected classes on the basis of her race and sex. Regarding the second and third elements, defendants do not dispute that Hugle made comments that were unwelcome and were based on plaintiff's protected classes of race and sex. Whether plaintiff heard the remarks herself is not dispositive to the issue. A plaintiff generally can rely on discriminatory conduct or statements of which she is aware during the time the hostile work environment is alleged. *Langlois v McDonald's Restaurants of Mich, Inc*, 149 Mich App 309, 317; 385 NW2d 778 (1986). Given plaintiff was aware of Hugle's comments, she was subjected to unwelcome conduct related to her protected classes. The first three elements are satisfied. However, plaintiff fails to satisfy the two remaining elements.

With regard to the fourth element, plaintiff cannot show that Hugle's comments created a hostile work environment or were intended to or did interfere with her ability to do her job. There is no question Hugle's remarks were highly offensive, but, considering the other factors, they did not rise to the level of creating a hostile work environment. The comments were not severe enough for plaintiff to even report them. Hugle's comments were infrequent, as plaintiff only reported hearing of them a few times over a four-year period. Hugle's conduct was never physically threatening or intimidating because he never engaged in discriminatory conduct in plaintiff's presence. Hugle's comments amounted to offensive utterances, which are not enough to create a

hostile work environment. *Quinto*, 451 Mich at 370 n 9. Hugle's conduct on its own is insufficient to find a hostile work environment.

Plaintiff also cannot show that defendants' conduct interfered with her ability to do her work. Plaintiff argues that she suffered from emotional distress, which forced her to take leave time and prevented her from doing her job in February 2018. In her deposition, plaintiff testified that she began psychiatric treatment for post-traumatic stress disorder in January 2017 after her team was subjected to an investigation and an officer she was friends with was killed in the line of duty. Then around the time the investigation into her work began, plaintiff started to experience similar feelings of stress related to her job; particularly, she felt unsafe having to back up Hugle. However, while plaintiff's main complaint was having to backup Hugle beginning in January 2018, she only had to back him up approximately four times. Plaintiff's emotional distress in 2018 was not close in time to any racist or sexist comments made by Hugle. Plaintiff's EEOC complaint did not allege any new conduct by Hugle around this time in January or February 2018 that interfered with her ability to do her job. In fact, the EEOC complaint listed January 3, 2018, as the last date any discriminatory action took place. Plaintiff has not offered evidence connecting her emotional distress to Hugle's remarks or any of Hugle's conduct while backing him up. Her complaint about working with Hugle was that he was unprofessional. Plaintiff has not shown Hugle's comments created a hostile work environment or that any racist or sexist conduct inhibited her ability to do her job. Plaintiff cannot satisfy this element.

Plaintiff also cannot satisfy the element that the employer must be liable under respondeat superior. Our Supreme Court has held, "[t]he bottom line is that, in cases involving a hostile work environment claim, a plaintiff must show some fault on the part of the employer." *Chambers v Trettco, Inc*, 463 Mich 297, 312; 614 NW2d 910 (2000). The Court further stated that it is a plaintiff's burden to "prove that the employer failed to take prompt and adequate remedial action upon notice of the creation of a hostile work environment." *Id*. Defendants are not liable under respondeat superior for the simple reason that neither defendant MDOC nor its agents were aware of any race or sex-based discrimination based on Hugle's comments. The only time plaintiff made a discrimination claim, beyond a hostile work environment claim based on Hugle's professionalism, was her EEOC complaint. That complaint failed to make allegations of race or sex-based discrimination beyond her conclusory allegation that her complaint of work rules violations against Hugle led to a hostile work environment and retaliation. None of that would indicate to an employer that a hostile work environment based on race and sex existed. More importantly, plaintiff does not explain how or why MDOC would have or should have known about any of plaintiff's allegations. Plaintiff and Hugle both testified that they very rarely went to an MDOC office. Given the two were seldom in the same place, it is not clear how MDOC could be aware of a hostile work environment without plaintiff reporting it. Without actual knowledge of plaintiff's allegations against Hugle, or an ability to monitor such conduct, as most activities took place outside of MDOC facilities, we cannot conclude defendants should have discovered the alleged conduct or that they failed to take proper remedial action. Plaintiff cannot establish the element of respondeat superior.

To summarize, plaintiff failed to show the fourth and fifth elements of her hostile work environment claim. Accordingly, the trial court did not err when it granted summary disposition in favor of defendants on that claim.

## V. RETALIATION

Plaintiff argues that the trial court erred as a matter of law when it granted summary disposition in favor of defendants on her retaliation claim. We disagree.

An employer is prohibited from retaliating against an employee who engaged in CRA-protected activity. See MCL 37.2701(a). Under the CRA, it is impermissible to "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.2701(a).

For the reasons discussed previously, plaintiff has not presented direct evidence of discrimination and must proceed under an indirect evidence theory. *Debano-Griffin v Lake Co*, 493 Mich 167, 176; 828 NW2d 634 (2013). To establish a prima facie case of retaliation, a plaintiff must show "(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *El-Khalil*, 504 Mich at 161. Plaintiff can establish the second element because defendants were aware of her complaints. Plaintiff complained orally and once in writing to three supervisors, who were obviously aware of those complaints, and her EEOC complaint was filed jointly with MDOC.

Regarding the first element, there is no dispute that plaintiff's EEOC complaint is protected activity under the CRA. The element is satisfied regarding that argument. However, the three other complaints to supervisors did not constitute protected activity. "An employee need not specifically cite the CRA when making a charge under the act. However, the employee must do more than generally assert unfair treatment." *Barrett v Kirtland Community College*, 245 Mich App 306, 318-319; 628 NW2d 63 (2001), superseded on other grounds by *Moldanado v Ford*, 476 Mich 372; 719 NW2d 809 (2006). "The employee's charge must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to the CRA." *Barrett*, 245 Mich App at 319. Plaintiff asserts that she complained to three supervisors regarding Hugle's conduct, but none of those complaints suggested a potential CRA claim. Plaintiff's e-mailed complaint to Levens only alleged that Hugle was treating her unfairly regarding their working relationship. Plaintiff complained to two other supervisors, Monica Swain and Latrelle Pickens, but plaintiff acknowledged that those complaints also were about professional disagreements with Hugle. Thus, plaintiff fails to establish the first element regarding her complaints before her EEOC complaint.

The third element is that the plaintiff must have suffered an adverse employment action. *El-Khalil*, 504 Mich at 161. In *White*, this Court adopted the reasonable-employee standard for determining whether an employee suffered an adverse employment decision that was retaliatory. *White*, 334 Mich App at 120-121. An employment decision is retaliatory when it would have " 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Id*. at 118, quoting *Burlington Northern & Santa Fe R Co v White*, 548 US 53, 68; 126 S Ct 2405; 165 L Ed 2d 345 (2006). The category of actions that can be retaliatory is broader than the types of discriminatory conduct that constitute a change in the terms and conditions of employment in other CRA claims. *White*, 334 Mich App at 118. The conduct must be enough to dissuade a reasonable

person from taking a protected act, but the complained-of conduct must be more than a petty slight, minor annoyance, or a lack of good manners. *Id.*

Plaintiff argues that the same conduct she complains of in her other claims support her retaliation claim, which are that she (1) was forced to work from an office, (2) was removed from the honor guard, (3) was forced to work with her former fiancé, (4) was constructively discharged, (5) had an investigation referred to internal affairs, and (6) was given a negative postemployment review. As explained previously, the allegation concerning a negative postemployment review is arguably sufficient to constitute an adverse employment action in the context of disparate treatment and would therefore be sufficient to constitute an adverse employment action in the context of retaliation as well. See *id*.

Regardless, plaintiff cannot show the last element of her retaliation claim, which is that there was a "causal connection between the protected activity and the adverse employment action." *El-Khalil*, 504 Mich at 161. "To establish a causal connection, a plaintiff must demonstrate that his participation in the protected activity was a significant factor in the employer's adverse employment action, not merely that there was a causal link between the two events." *Aho v Dep't of Corrections*, 263 Mich App 281, 289; 688 NW2d 104 (2004) (quotation marks and citation omitted). "Thus, mere discriminatory or adverse action will not suffice as evidence of retaliation unless the plaintiff demonstrates a clear nexus between such action and the protected activity." *Id*. Temporal proximity between the protected activity and the employment action alone is insufficient to establish causation; additional evidence of causation is required. *Debano-Griffin*, 493 Mich at 177.

Plaintiff cannot show a causal link or clear nexus between her CRA-protected activity and the employment actions she claims were adverse. The complaints before plaintiff's EEOC filing were not protected activity and cannot support a retaliation claim. Thus, plaintiff cannot show causation for those actions.

More importantly, plaintiff does not show a causal connection between her CRA-protected EEOC complaint and Levens's postemployment review to the ATF. Plaintiff's March 2018 EEOC complaint was close in time to Levens's May 2018 postemployment review to the ATF. But temporal proximity alone is not sufficient. *Debano-Griffin*, 493 Mich at 177. Plaintiff must still bring forth evidence of the causal connection between the protected activity and the employment action. *Id*. The cause of Levens's postemployment review was plaintiff's authorization for the ATF to interview her former employers regarding her employment and disciplinary history. The review consisted of accurate information. Plaintiff must show that her "participation in the protected activity was a significant factor in the employer's adverse employment action, not merely that there was a causal link between the two events." *Aho*, 263 Mich App at 289. Plaintiff cannot do that here. She has not brought forth evidence of a causal connection between her EEOC complaint and Levens's review, let alone that retaliatory motive for the complaint was a significant factor in Levens's review. Thus, plaintiff has failed to satisfy the element of causation. Accordingly, plaintiff's retaliation claim fails.

VI. CONCLUSION

-14-

The trial court did not err when it granted summary disposition in favor of defendants on plaintiff's claims of disparate treatment, hostile work environment, and retaliation.

Affirmed.


/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan