*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

RICHARD MILLER, BRENDA MILLER, and
BRENT WHITMAN,

       Plaintiffs-Appellees,

v

MICHIGAN DEPARTMENT OF CORRECTIONS,

       Defendant-Appellant.

FOR PUBLICATION
August 25, 2022
9:20 a.m.

No.  356430
Genesee Circuit Court
LC No.  20-114172-CD

Before:  MURRAY, P.J., and SAWYER and M. J. KELLY, JJ.

MURRAY, P.J.

This appeal involves an anti-retaliation claim under the Elliot-Larsen Civil Rights Act (ELCRA or Act), MCL 37.2201 *et seq.*  But, unlike a typical retaliation case, this one is not being pursued by the persons who complained about the employer's acts or policies as being violative of the Act, and were then terminated from their employment.  Instead, plaintiffs claim they were terminated from their positions because they are close friends with the person engaging in the protected activity.  The trial court denied defendant's motion for summary disposition on the pleadings, concluding that the close friendship was sufficient to maintain a "third-party" retaliation claim.  We granted leave to appeal to determine whether plaintiffs can allege a third-party retaliation claim under the Act.  We conclude that while certain third-party retaliation claims are viable under MCL 37.2701(f), plaintiffs have not alleged such a claim as currently plead.  We, therefore, reverse the order denying defendant's motion for summary disposition and remand for further proceedings consistent with this opinion.

## I.  FACTS[1]

---

[1] Because defendant brought its motion under MCR 2.116(C)(8), these facts are based upon the allegations in plaintiffs' first amended complaint, which we accept as true.

-1-

Plaintiffs[2] were employed at the Thumb Correctional Facility and had been employees of defendant, the Michigan Department of Corrections, since at least 1999. Plaintiffs' supervisor was Cedric Griffey, with whom both plaintiffs had "an extremely close" relationship. Lisa Griffey, Cedric's wife and an MDOC employee herself, filed a civil rights complaint alleging that she was racially harassed in the workplace. According to plaintiffs, after Cedric complained to management about the harassment of his wife, an internal affairs agent was sent to the correctional facility in order to retaliate against him. Plaintiffs alleged that defendant conducted a "sham investigation" on another matter in order to justify disciplining Cedric, and plaintiffs stated that they "participated honestly" in this investigation. However, as part of defendant's attempt to retaliate against Cedric, plaintiffs alleged that defendant falsely accused them of wrongdoing. According to plaintiffs, "in Defendant's effort to illegally terminate Lisa Griffey, Cedric Griffey[,] and retaliate against them, [plaintiffs] were terminated."

In order to remedy those terminations, plaintiffs filed a complaint alleging, amongst other claims, retaliation under the ELCRA. A subsequently filed amended complaint described plaintiffs' relationship with Cedric:

a. Whitman, [Richard] Miller, and Griffey considered each other friends;

b. Mr. Griffey had met and interacted with Plaintiffs' families;

c. Everyone knew that Miller and Whitman were close to Cedric Griffey;

d. The three shared intimate information about each other's loved ones and families;

e. Plaintiff Whitman's brother even went to Mr. Griffey's house before;

f. Plaintiffs went to Griffey not just as a supervisor, but as a friend they could confide in.

Plaintiffs also alleged that defendant had a "culture of retaliation that ostracizes and punishes employees who bring embarrassment onto [MDOC]," and that the head of defendant's internal affairs department admitted under oath that internal affairs had conducted "crooked investigations in order to punish employees who spoke out against the employers," which had been termed "gotcha" investigations.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(8), arguing that because plaintiffs did not allege that they engaged in any protected civil rights activity, they had failed to state a valid retaliation claim under the ELCRA. Plaintiffs, for their part, asserted that they had indeed pleaded a cognizable claim for "associational" or "third-party" retaliation, pointing to the decision in *Thompson v North American Stainless, LP*, 562 US 170, 173-174; 131 S Ct 863; 178 L Ed 2d 694 (2011), in which the Supreme Court upheld a third-party retaliation claim under Title VII of the federal Civil Rights Act, 42 USC 2000e *et seq*. Plaintiffs argued that they had a viable claim of retaliation under *Thompson* because defendant terminated them as an

---

[2] Our reference to "plaintiffs" is to Richard Miller and Brent Whitman, who were employed by the MDOC. Plaintiff Brenda Miller was not employed by the MDOC, and she only asserts a derivative loss of consortium claim.

act of retaliation against their close friend Cedric, who had engaged in an activity protected under the ELCRA.

The trial court took the motion for summary disposition under advisement, and subsequently issued an opinion and order denying defendant's motion. After reciting the parties' arguments and the relevant legal standards, the trial court ruled:

> This Court, without any explicit Michigan authority on whether a close friendship can be the basis of a third party retaliation claim, agrees it [is] appropriate to follow [the] federal approach articulated by Justice Scalia [in *Thompson*]—one that focuses on whether the alleged retaliation would cause 'a reasonable worker [to] be dissuaded from engaging in protected activity.'

> A (C)(8) motion should be granted only if the claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. The Court can envision a scenario whereby a defendant could deliberately cause real emotional and psychological pain to a 'reasonable worker' by retaliating against his or her close friend such that he or she would be 'dissuaded from engaging in protected activity.' Another way of saying it is that the Court cannot effectively engage in Justice Scalia's line-drawing exercise without allowing Plaintiffs the opportunity to develop the facts through discovery. Having said that, it may be appropriate to litigate the question in the context of a (C)(10) motion after discovery.

As noted, our grant of defendant's application led to this appeal.[3]

## II. ANALYSIS

### A. APPELLATE STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition, *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998), and applies that same non-deferential standard when reviewing issues of statutory interpretation. *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011).

### B. SUBSTANTIVE STANDARD OF REVIEW

Defendant moved for summary disposition pursuant to MCR 2.116(C)(8), which provides that summary disposition is appropriate when "[t]he opposing party has failed to state a claim on which relief can be granted." Because a motion for summary disposition under MCR 2.116(C)(8) tests the "legal sufficiency of the complaint," this Court must accept all well-pleaded factual allegations as true and must view those allegations in the light most favorable to the nonmovant. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). The pleadings *alone* are considered, and summary disposition can only be granted under this subrule when the claim is "so

---

[3] *Miller v Department of Corrections*, unpublished order of the Court of Appeals, entered June 9, 2021 (Docket No. 356430).

clearly unenforceable that no factual development could possibly justify recovery." *Mays v Governor*, 506 Mich 157, 173; 954 NW2d 139 (2020) (quotation marks and citation omitted).

## C. THIRD-PARTY RETALIATION CLAIMS

Since soon after the Act was signed into law in 1972, Michigan courts have enforced the text of the antiretaliation section, MCL 37.2701(a), by requiring that in the absence of direct evidence, a plaintiff claiming retaliation allege and prove, amongst other things, that *he* was engaged in protected activity. See e.g., *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 273; 696 NW2d 646 (2005) ("To establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in a protected activity . . . and (4) that there was a causal connection between the protected activity and the adverse employment action."); *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 161; 934 NW2d 665 (2019) ("[T]o establish a prima facie case of unlawful retaliation under the Civil Rights Act, a plaintiff must show (1) that he engaged in a protected activity"); *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997) (same), and *Kocenda v Detroit Edison Co*, 139 Mich App 721, 726; 363 NW2d 20 (1984) ("Plaintiffs need only establish a causal link between participation in the protected activity and the adverse employment treatment complained of.").

But as we noted at the outset of this opinion, plaintiffs' argument is that under *Thompson* they can maintain a retaliation claim under the Act even if *they* did not engage in the protected activity that resulted in the allegedly retaliatory act, as long as they can prove that they were terminated from employment in retaliation for another person's—here a close friend's—engaging in that protected activity. Not surprisingly, to determine whether to apply *Thompson* to subsection (a) of the Act we must examine the actual language contained in that subsection, and then compare those to the same provision within Title VII.

We have previously recognized that the principal antiretaliation provision of the Act, MCL 37.2701(a), and Title VII's antiretaliation provision, 42 USC 2000e-3(a), generally mirror each other. *White v Dep't of Transp*, 334 Mich App 98, 116-117; 964 NW2d 88 (2020). At the same time, however, we must remain cognizant that federal decisions interpreting Title VII are not blindly applied to the counterpart sections of the Act. Instead, *only* if the controlling language in Title VII is substantially similar to that contained in the Act, can we look to federal case law for potential guidance. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 311 n 3; 660 NW2d 351 (2003) ("It is well-settled that when the language of the CRA and Title VII are substantially similar, our courts consider federal case law interpreting Title VII to be persuasive, albeit not binding, authority on issues brought under the CRA.").

MCL 37.2701(a)-(f) contains six subsections that set forth a number of prohibited acts. Subsection (a), considered the ELCRA's general antiretaliation provision, states that a person[4] (or two or more persons, together) shall not:

> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a

---

[4] A person is defined to include an individual and an agency of the state, amongst other entities. MCL 37.2103(g).

complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL 37.2701.]

"A person alleging a violation" of the ELCRA may bring a civil suit for damages. MCL 37.2801(1).

42 USC § 2000e-3(a), the antiretaliation section of Title VII, states:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, *because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.* [emphasis added.]

Additionally, Title VII provides that "a civil action may be brought . . . by the person claiming to be aggrieved." 42 USC 2000e-5(f)(1).

As noted in *White*, the language and protections contained in MCL 37.2701(a) are substantially similar[5] to what is contained in 42 USC 2000e-3(a), *White*, 334 Mich App at 116-117; so too between who is statutorily eligible to bring a claim under MCL 37.2801(a) and 42 USC 2000e-5(f)(1). Thus, we turn to an examination of *Thompson* and how it construed these Title VII provisions.

*Thompson* relied in great part on the Court's earlier decision in *Burlington Northern & Santa Fe R Co v White,* 548 US 53; 126 S Ct 2405; 165 L Ed 2d 345 (2006), so it is worthwhile to first examine what the *Burlington* Court held. In *Burlington*, the Court resolved a disagreement among federal circuit courts of appeal regarding whether 42 USC 2000e3(a) was limited to employer conduct that adversely impacted an employee's terms and conditions of employment. *Burlington*, 548 US at 59-61. Some circuit courts had interpreted the provision to require that the retaliatory action relates to the employee's actual terms and conditions of employment, or an ultimate employment decision such as hiring or firing. *Id*. at 60. Other federal appeals courts had given a broader interpretation to the provision, concluding that an employer's retaliatory action violated Title VII if it would likely have " 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Id*., citing *Washington v Illinois Dep't of Revenue*, 420 F3d 658, 662 (CA 7, 2005), and *Rochon v Gonzales*, 370 US App DC 74, 82; 438 F3d 1211 (2006).

The Supreme Court concluded that, while Title VII's *antidiscrimination* provision protected an employee only from discrimination based upon an adverse employment action, the antiretaliation provision included no such textual limitation. *Burlington*, 548 US at 62.

---

[5] The wording of these statutes is not, contrary to plaintiffs' argument, identical. For example, subsection (a) actually states that a person shall not "retaliate" against a person, whereas Title VII only states that a person shall not "discriminate" against a person for engaging in protected activity. Nevertheless, they both prohibit the same conduct for the same reasons.

Accordingly, the *Burlington* Court adopted the "reasonable worker" standard for determining the scope of Title VII's protections from employer retaliation. *Id*. at 67-68. The Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68 (quotation marks and citations omitted). The Court made clear that the standard for judging harm was objective, but also context-dependent "because the significance of any given act of retaliation will often depend upon the particular circumstances." *Id*. at 68-69. This Court subsequently adopted *Burlington*'s "reasonable worker" standard for purposes of the Act's antiretaliation provision, MCL 37.2701(a). *White*, 334 Mich App at 120-121.

Five years later, the *Thompson* Court addressed whether a plaintiff, who alleged that he was fired in retaliation for his fiancée's filing of a sex discrimination complaint against their mutual employer, could bring a retaliation claim under Title VII. *Thompson*, 562 US at 172-173. The Supreme Court had little trouble concluding that, if the facts as alleged by the plaintiff were true, then his firing violated Title VII. *Id*. at 173. Applying its holding in *Burlington*, the *Thompson* Court concluded that it was "obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired." *Id*. at 174. The Court also addressed the "difficult line-drawing problems" involved in determining which third-party relationships garnered protection from retaliation:

> We must also decline to identify a fixed class of relationships for which third-party reprisals are unlawful. We expect that firing a close family member will almost always meet the *Burlington* standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so, but beyond that we are reluctant to generalize. As we explained in *Burlington*, 548 US at 69, 'the significance of any given act of retaliation will often depend upon the particular circumstances.' Given the broad statutory text and the variety of workplace contexts in which retaliation may occur, Title VII's antiretaliation provision is simply not reducible to a comprehensive set of clear rules. [*Id*. at 175 (citation omitted).]

Given the Court's conclusion that the termination as alleged by the plaintiff could constitute a violation of Title VII, the Court next had to decide whether the plaintiff was a proper party to sue his employer for the alleged violation. *Id*. Title VII, as noted earlier, provides that "a civil action may be brought . . . by the person claiming to be aggrieved." 42 USC § 2000e-5(f)(1). Looking to the Court's own interpretation of the language regarding who may bring suit under the federal Administrative Procedure Act, 5 USC 551 *et seq*., the *Thompson* Court construed "person claiming to be aggrieved" to mean that any person could sue who fell within the "zone of interests" protected by Title VII's antiretaliation provision. *Thompson*, 562 US at 177. In deciding on this standard, the Court rejected the notion that anyone who merely satisfied Article III standing requirements constituted a "person claiming to be aggrieved." *Id*. at 176-177. However, the Court also rejected the argument on the other end of the spectrum, i.e., that only the "employee who engaged in the protected activity" could sue under Title VII's antiretaliation provision, explaining:

> We know of no other context in which the words carry this artificially narrow meaning, and if that is what Congress intended it would more naturally have said 'person claiming to have been discriminated against' rather than 'person claiming to be aggrieved.' We see no basis in text or prior practice for limiting the latter phrase to the person who was the subject of unlawful retaliation. [*Id*. at 177.]

Because the plaintiff was an employee of the defendant, and Title VII's statutory provisions protect employees from the unlawful actions of their employer, the Court concluded that the plaintiff was "a person aggrieved with standing to sue." *Id*. at 178[6]

If only subsection (a) were at issue, we would need to go no further to conclude that *Thompson* was persuasive and that a third-party retaliation claim of the caliber discussed in *Thompson* could be brought under the Act, even when—as here and in *Thompson*—the plaintiff was retaliated against for someone else engaging in protected activity. We would do so because the language in MCL 37.2701(a) and 42 USC 2000e-3(a) are substantially similar, as is the language within MCL 37.2801(a) and 42 USC 2000e-5(f)(1). But subsection (a) is not the only subsection in play. Instead, defendant argues that one of the other subsections within MCL 37.2701, MCL 37.2701(f), provides an avenue for third-party retaliation claims, and because the legislature has already detailed when such a claim can be maintained, subsection (a) cannot be read to encapsulate *Thompson*'s reading of 42 USC 2000e-3(a).

Before turning to the merits, we first address the timing of defendant's argument under subsection (f), as the argument was not raised until oral argument before this Court. That is, defendant did not raise the argument in its motion for summary disposition, and thus neither plaintiff nor the trial court could address it. "Michigan generally follows the 'raise or waive' rule of appellate review." *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). See also *Napier v Jacobs*, 429 Mich 222, 227; 414 NW2d 862 (1987) ("A general rule of trial practice is that failure to timely raise an issue waives review of that issue on appeal."). However, this Court "may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). Indeed, "[w]hen consideration of a claim sought to be raised is necessary to a proper determination of a case, the rule that unpreserved issues are waived will not be applied." *Duffy v Dep't of Natural Resources*, 490 Mich 198, 209 n 3; 805 NW2d 399 (2011) (quotation marks, citation, and alterations omitted).

To properly determine the existence and scope of a third-party retaliation claim under the Act, consideration must be given to subsection (f). If we only considered subsection (a) in isolation, we could potentially reach a conclusion that does not square with the remainder of MCL 37.2701, and our obligation is to enforce all parts of the statute, and to read them together harmoniously if possible. *People v Jackson*, 487 Mich 783, 791; 790 NW2d 340 (2010); *United States Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n* (*On Rehearing*), 484 Mich 1, 13; 795 NW2d 101 (2009). Additionally, the meaning of subsection (f) is a question of law that requires no factual development, and we have given both sides the opportunity to brief the issue

---

[6] There is one unpublished decision that considered *Thompson* in the context of an ELCRA retaliation claim, but the panel both distinguished *Thompson* on the facts, and determined that the Title VII antiretaliation provision was "much broader" than the provision contained in the Act. *Chojnowski v Huron Clinton Metro Authority*, unpublished per curiam opinion of the Court of Appeals, decided March 26, 2015 (Docket No. 317655). Because *Chojnowski* is unpublished, it is not binding. MCR 7.215(C)(1).

subsequent to oral argument. Accordingly, because a consideration of this argument is necessary for a proper determination, we will address this issue. See *Duffy*, 490 Mich at 209 n 3.

MCL 37.2701(f) provides that a person (or, as noted earlier, two or more persons together) shall not:

> (f) Coerce, intimidate, threaten, or interfere with a person in the exercise or enjoyment of, or on account of his or her having aided or encouraged *any other person* in the exercise or enjoyment of, any right granted or protected by this act. [emphasis added.]

In determining the meaning of any statutory provision, we look to the words used by the legislature, and if that language is plain and unambiguous, we enforce it as written. *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001). And in such circumstances, resorting to judicial aids for determining the meaning of legislation is unwarranted. *Tope v Howe*, 179 Mich App 91, 101-102; 445 NW2d 452 (1989).

The legislature added subsection (f) in 1992, see 1992 PA 124, and is an almost verbatim replication of the language contained in the federal Fair Housing Act (FHA), 42 USC 3617.[7] And that's no coincidence, as Congress required states to comply with the Fair Housing Amendments Act of 1988 by January 1992, or face losing the ability to handle local complaints under the FHA. See PL 100–430; 102 Stat 1619, section 810(f)(3)(a), and House Legislative Analysis, HBs 5029 & 5030 (December 4, 1991). See also *Crossing Over, Inc v City of Fitchburg*, 98 Mass App 822, 831 n 13; 161 NE3d 432 (2020) and Schwemm, *Neighbor-on-Neighbor Harassment: Does the Fair Housing Act Make a Federal Case Out of It?*, 61 Case W Res L Rev 865, 870 (2011).

There are several important points that emanate from the language of subsection (f). First, the Michigan Legislature—unlike the United States Congress—provided a provision addressing third-party claims. Second, although the purpose of the subsection was to comply with housing concerns, nothing within the language limits it to those matters. Third, the subsection plainly states that a person cannot "coerce, intimidate, threaten or interfere" with a person who aids or encourages "any other person" in the exercise of a right under the Act. Thus, unlike subsection (a), subsection (f) does not contain the word "retaliate." We now turn to whether, and to what extent, these three points have upon our reading of subsections (a) and (f).

We first begin with the fact that subsection (f) does not contain the word "retaliate." We must presume that the inclusion of that word in subsection (a), and its exclusion from subsection (f), was intentional. *Coblentz v Novi*, 475 Mich 558, 572; 719 NW2d 73 (2006) ("The words chosen by the Legislature are presumed intentional."). Doing so leads quickly to the presumption (but not conclusion) that subsection (f) applies to acts other than retaliatory ones. But perhaps in pursuit of complying with Congressional desires for states to comply with certain provisions of the FHA by a certain deadline, the legislature in haste actually meant for subsection (f) to cover

---

[7] 42 USC 3617 provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

retaliatory acts, but for compliance reasons instead used the words adopted in 42 USC 3607. It's possible, but that argument runs afoul of our general obligation not to "speculate that [the legislature] used one word when it meant another." *Id.*, citing *Detroit v Redford Twp*, 253 Mich 453, 456; 235 NW 217 (1931).

That doctrine aside, we must determine the plain meaning of the undefined words used in subsection (f), as that plain meaning controls over any canon of statutory construction. Turning to the dictionary, "coerce" means "to compel to an act or choice" or "to achieve by force or threat." Merriam-Webster's Collegiate Dictionary (11th Ed). "Intimidate" means "to compel or deter by or as if by threats," while "interfere" means "to enter into or take a part in the concerns of others." *Id.* Last, "threaten" means "to utter threats against," meaning to utter "an expression of intention to inflict evil, injury or damage." *Id.* As these definitions reflect, each word contained in subsection (f) includes conduct that can be taken as a form of retaliatory conduct. See *id.* (To "retaliate" means "to return like for like; esp: to get revenge"). In other words, under subsection (f), an employer could unlawfully "coerce" an employee who "aided or encouraged" another employee in the exercise of a right under the Act by, for example, threatening to change the employee's work schedule, work area, or position. If any one of those coercive acts were taken against the third party because that employee had aided or encouraged the other employee, it would be a form of retaliation, as the employer would be seeking revenge against the employee for aiding or encouraging another.

Applied in the employment context, subsection (f) precludes an employer from coercing, intimidating, threatening or interfering with an employee's employment when that employee aids or encourages another person—like a fellow employee—to exercise a right under the Act. This could include anything from a change of job duties, to a termination of employment, to the threat of any such conduct.[8] It was plainly the intent of the legislature to provide relief to this group of persons who aid or encourage another to engage in protected activity.[9] Indeed, to "aid or encourage" another in the exercise or enjoyment of a right under the Act is itself protected activity.

---

[8] Thus, the fact that the term "retaliation" is not contained within subsection (f) is of no moment, as the terms coerce, intimidate, threaten and interfere encompass acts that could constitute retaliation.

[9] The text of subsection (f) makes clear that it is not limited to only prohibiting retaliatory conduct by an employer. In other words, subsection (f) can be violated without the conduct being retaliatory in nature, even though it is still coercive, intimidating, interfering, or threatening. For example, an employee who is not alleged to have acted against a fellow employee for engaging in protected activity, could still violate subsection (f) if she engages in coercive, intimidating, threatening or interfering conduct against an employee who is aiding or encouraging another employee. This hypothetical employee would not be acting in a retaliatory manner since the employee exercising rights under the Act has not alleged that the hypothetical employee engaged in any wrong doing, and thus there is no retaliatory motive for taking the prohibited conduct.

The ramifications that subsection (f) has on plaintiffs' arguments under subsection (a) are numerous. First, because the legislature has provided for certain[10] third-party retaliation claims while Congress has not, *Thompson* does not apply to how we interpret language contained in subsection (f) that is found nowhere in Title VII. *Garg*, 472 Mich at 283 ("While federal precedent may often be useful as guidance in this Court's interpretation of laws with federal analogues, such precedent cannot be allowed to rewrite Michigan law. The persuasiveness of federal precedent can only be considered after the statutory differences between Michigan and federal law have been fully assessed . . . .").

Second, and relatedly, in light of subsection (f), we cannot employ *Thompson*'s reading of Title VII to discern the meaning of subsection (a), because that reading would essentially swallow-up and nullify subsection (f)'s requirement that only a third-party who "aids or encourages" another employee cannot then be coerced, intimidated, etc., by an employer. *Chambers v Trettco, Inc*, 463 Mich 297, 314; 614 NW2d 910 (2000) ("Although there will often be good reasons to look for guidance in federal interpretations of similar laws, particularly where the Legislature has acted to conform Michigan law with the decisions of the federal judiciary . . . we cannot defer to federal interpretations if doing so would nullify a portion of the Legislature's enactment."). Applying the reading of 42 USC 2000e-3(a) provided in *Thompson* onto MCL 37.2701(a) would essentially eliminate the more-narrow legislative rule contained in subsection (f). This we cannot do. *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002) ("Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory.").

Third, and again related to the first two principles, it has long been settled law that once the legislature speaks on an issue and grants rights and remedies to a certain group of persons, the courts cannot, by judicial fiat, enlarge that scope of protection or the available remedy. *Thurston v Prentiss*, 1 Mich 193, 200 (1849) ("It is a well established principle of law, that where a statute gives a new right and prescribes a particular remedy, such remedy must be strictly pursued; and a party seeking the remedy is confined to that remedy, and that only."); *South Haven v Van Buren Co Bd of Comm'rs*, 478 Mich 518, 528-529; 734 NW2d 533 (2007).[11] By adopting the *Thompson*

---

[10] Only those persons who "aid or encourage" another person fall within the "third-party" claim recognized under subsection (f). Under *Thompson* a plaintiff would not necessarily have to provide aid or encouragement to the one exercising the right in order to bring a third-party claim.

[11] To the extent *South Haven* references pre-existing common law, we note that "[a]t common law, there was no right to be free from being fired for reporting an employer's violation of the law." *Dudewicz v Norris-Schmid, Inc*, 443 Mich 68, 78; 503 NW2d 645 (1993), citing *Covell v Spengler*, 141 Mich App 76, 83; 366 NW2d 76 (1985). See also *Lewandowski v Nuclear Mgt*, 272 Mich App 120, 127; 724 NW2d 718 (2006) ("Moreover, an employee has no common-law right to avoid termination when he or she reports an employer's violation of the law."). *Dudewicz* and *Lewandowski*, which were decided under the Whistleblower's Protection Act, MCL 15.361 *et seq*., also recognized that there is a common law public policy cause of action when an at-will employee's employment is terminated contrary to an explicit statutory command. *Dudewicz*, 443 Mich at 79-80. However, we have found no common law recognition of the right of an employee to not be retaliated against by an employer for aiding or encouraging a fellow employee to pursue

-10-

rationale under subsection (a), we would be expanding the circumstances in which such a claim can be brought beyond that set out in subsection (f).

Fourth, because the Act contains a subsection specifically granting a third-party retaliation claim, the issue of third-party claims is controlled by subsection (f), the more specific statutory provision. See *Gebhardt v O'Rourke*, 444 Mich 535, 542; 510 NW2d 900 (1994) ("[W]here a statute contains a general provision and a specific provision, the specific provision controls."); *Telford v Michigan*, 327 Mich App 195, 199; 933 NW2d 347 (2019) ("All other things being equal, a more specific statutory provision controls over a more general statutory provision.").

Fifth, and finally, as to plaintiffs' allegations, because they did not allege in the amended complaint that they aided or encouraged Cedric to engage in protected activity, their third-party claim of retaliation fails to state a claim upon which relief could be granted. Their close friendship alone does not suffice to state a claim under MCL 37.2701(f).

For these reasons, we reverse the trial court's order denying defendant's motion for summary disposition under MCR 2.116(C)(8), and remand for further proceedings consistent with this opinion, including an opportunity for plaintiffs to file a motion to amend the complaint. No costs, a public question involved. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Michael J. Kelly

---

a civil rights complaint, nor was there any state law command against such actions prior to the Act.